2007-NMCA-133

175 P.3d 309

SANTA FE PACIFIC GOLD CORPORA-
TION, Plaintiff/Counter–Defendant,

v.

UNITED NUCLEAR CORPORATION,
Defendant/Counterclaimant/Third–
Party Plaintiff,

v.

The Travelers Indemnity Company and
Travelers Casualty and Surety Compa-
ny, Third–Party Defendants/Appellees,

v.

General Electric Company and Geolex,
Inc., Nonparty Appellants.

Nos. 26,727, 27,671.

Court of Appeals of New Mexico.

Aug. 22, 2007.

Andrews Kurth LLP, Jerry L. Beane, Dallas, TX, Rodey, Dickason, Sloan, Akin & Robb, P.A., Mark C. Meiering, Edward Ricco, Albuquerque, NM, for Appellees.

Farella, Braun & Martel LLP, James A. Bruen, Derrick K. Watson, Andrew W. Ingersoll, San Francisco, CA, Tinnin Law Firm, Stanley K. Kotovsky, Jr., Albuquerque, NM, for Appellant General Electric Company.

Bannerman & Williams, P.A., John A. Bannerman, Albuquerque, NM, for Appellant Geolex, Inc.

## OPINION

CASTILLO, Judge.

{1} In this case, we review a discovery order requiring a nonparty to produce certain documents for in camera review. This Court granted Appellants' application for interlocutory appeal to address questions of law regarding attorney-client privilege, the common interest doctrine, and work-product immunity in the context of corporations' assertion of a joint defense. We discuss attorney-client privilege and the work-product doctrine in light of existing New Mexico law. We conclude that the common interest doctrine may protect privileged documents in these circumstances and that a consultant's mental impressions and opinions are protected as opinion work product. We further conclude that sufficient facts supported the district court's determinations regarding the substantial need and undue hardship that are necessary for obtaining discovery of ordinary work product. Accordingly, we affirm the district court's order to produce the documents for in camera review, and we remand for further proceedings in accordance with this opinion.

## I. BACKGROUND

{2} The underlying action in this appeal began when Plaintiff Santa Fe Pacific Gold Corporation (Santa Fe Pacific) filed suit alleging breach of contract and common law tort claims against Defendant United Nuclear Corporation (UNC). UNC, seeking defense and indemnity, filed a third-party complaint against The Travelers Indemnity Company (Travelers), among other insurers. Santa Fe Pacific and UNC reached a settlement agreement in 2004; consequently, Santa Fe Pacific dismissed its action against UNC. The third-party action against Travelers is currently stayed, pending this appeal.

### A. Discovery Issues

{3} In February 2005, Travelers filed a notice to take the deposition of a representative of Geolex, Inc., (Geolex), a nonparty, and issued a subpoena duces tecum requesting production of the documents in question (Geolex Materials). Geolex responded by filing a motion to quash the subpoena and to issue a protective order preventing Travelers from seeking further discovery of the Geolex Materials. Geolex asserted, among other things, that these documents "relate to G[eolex's] confidential attorney-client communications and work product, all of which are privileged documents belonging to [Nonparty] General Electric Company" (GE), and that Geolex was contractually obliged to treat all of the Geolex Materials as privileged or work product. In the motion to quash and the brief in support of the motion, Geolex contended that all of the documents listed in the subpoena were protected by the attorney-client privilege and the work-product doctrine because all of the work performed by Geolex was "created and developed pursuant to instructions from GE's counsel for use in rendering legal advice to GE."

{4} Travelers filed a response to Geolex's motion to quash, and the district court referred the motion to a special master. After an initial hearing, Travelers prepared a draft report for the special master. At that time, GE questioned whether it had received adequate notice of the initial hearing, and GE filed its own motion to quash the notice and subpoena, in conjunction with GE's objection to Travelers' draft report, on the ground that the testimony and information was protected by the "attorney-client privilege or the work-product doctrine." GE argued that Geolex's communications with GE's in-house counsel, William V. Killoran, Jr., were protected by the attorney-client privilege because Geolex was employed to assist Killoran in the rendition of professional legal services. In addition, GE argued that the Geolex Materials had absolute immunity from discovery under the work-product doctrine. GE further argued that even if the work product were qualified, Travelers failed to and could not show a substantial need warranting disclosure in this case because Travelers failed to articulate specifically why it needed the materials and because it failed to demonstrate that the materials were not readily available by other means. Travelers filed a response to GE's motion to quash, and the special master held a second hearing, at which GE, Geolex, and Travelers were represented.

{5} After the second hearing, the special master forwarded his findings and recommendations to the district court. Without providing an opportunity for GE and Geolex to object, the district court initially adopted the special master's recommendation. This Court reversed the district court's initial discovery order in a memorandum opinion. The district court held a hearing prior to entering the order at issue in this appeal.

## B. The District Court's Order

{6} In the order, the district court adopted the findings of the special master and made additional findings, which we reference as they become pertinent to our discussion below. The district court concluded that the Geolex Materials are not protected by the attorney-client privilege because GE intended to disclose the Geolex Materials to UNC, a third person for purposes of Rule 11–503 NMRA. *See* Rule 11–503(A)(4) (stating that "a communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client"); *cf.* Rule 11–511 NMRA (stating that a privilege is waived if any significant part of the matter or communication is voluntarily disclosed by the holder of the privilege, unless the disclosure itself is a privileged communication). The court further concluded that the common interest doctrine did not apply because GE and UNC "were not aligned in defense against a common opponent during the Geolex investigation and acquisition of UNC" and "are still not aligned in a common defense[,] as GE is careful to explain that UNC is a separate corporate entity." Thus, the court held that the Geolex Materials are not confidential communications as defined in Rule 11–503.

{7} The district court also ruled that the Geolex Materials qualified for work-product protection because they were prepared for GE's attorney in anticipation of litigation involving UNC. *See* Rule 1–026(B)(4) NMRA. The court further determined that GE's ordinary work product is subject to discovery because Travelers has a substantial need for the Geolex Materials and because Travelers would bear undue hardship in obtaining the

equivalent information. In addition, the district court concluded that opinions rendered by the consultant are not "opinion" work product because the consultant's opinions are not the mental impressions, conclusions, opinions, or legal theories of an attorney. The court ordered an *in camera* review to distinguish ordinary work product from opinion work product.

{8} Appellants filed an application for interlocutory appeal, which we granted to consider controlling questions of law that present issues of first impression in New Mexico. Appellants contend that the district court erred in its conclusions of law regarding attorney-client privilege and work product and that the court abused its discretion in making certain findings and assuming certain facts. Appellants urge the court to uphold GE's assertions of attorney-client privilege and opinion work product for all of the Geolex Materials.

## II. DISCUSSION

### A. Standard of Review

{9} Generally, we review discovery orders for abuse of discretion. *Estate of Romero v. City of Santa Fe*, 2006–NMSC–028, ¶ 6, 139 N.M. 671, 137 P.3d 611. We review related questions of law de novo. *Id.*; *Piña v. Espinoza*, 2001–NMCA–055, ¶ 12, 130 N.M. 661, 29 P.3d 1062 ("To the extent a discretionary decision is premised on a construction of a privilege, it presents a question of law, subject to de novo review.").

### B. Appellants' Arguments

{10} Appellants make three arguments on appeal. First, Appellants argue that the district court erred when it ruled that the work-product doctrine did not extend to the entire work product of Geolex, who is a "representative of a party concerning the litigation." Rule 1–026(B)(4). Second, Appellants contend that the district court erred when it determined that Travelers has a substantial need for the Geolex Materials and that Travelers is unable to obtain the substantial equivalent of the materials without undue hardship. Third, Appellants maintain that

the district court erred in concluding that the attorney-client privilege did not apply.

{11} Appellants assert that the entirety of the Geolex Materials are protected by both the work-product rule and the attorney-client privilege, coterminously. Because greater protection is provided by the attorney-client privilege than by the work-product rule, we first address Appellants' contentions regarding the attorney-client privilege. Then, we turn to the work-product rule and opinion work product. Last, we address the showings necessary for Travelers to obtain discovery of ordinary work product.

## 1. Attorney–Client Privilege

{12} Appellants assert that the district court erred when it concluded that attorney-client privilege did not apply. The district court based its conclusion on a determination that the Geolex Materials were not confidential because GE intended from the outset to disclose the Geolex Materials to UNC, which is a third person for purposes of Rule 11–503(A)(4). Appellants contend that any disclosures to UNC did not preclude extending the privilege to the Geolex Materials because the disclosures to UNC came within the parameters of the common interest doctrine. We begin our discussion with a general overview of attorney-client privilege.

■ {13} A client may claim attorney-client privilege to refuse to disclose confidential communications between certain persons if the communications were made for the purpose of acquiring legal advice for the client. Rule 11–503(B); *see State ex rel. State Highway Comm'n v. Steinkraus,* 76 N.M. 617, 620, 417 P.2d 431, 432 (1966) (stating that the attorney-client privilege protects communications, not facts). Attorney-client privilege is an exception to the "established principle that the public has a right to every man's evidence." 1 Paul R. Rice, *Attorney–Client Privilege in the United States* § 2:3, at 14 (2d ed.1999) (internal quotation marks and citation omitted); *see also Hartman v. Texaco Inc.,* 1997–NMCA–032, ¶ 18, 123 N.M. 220, 937 P.2d 979 (stating that discovery is ordinarily presumed permissible); *Carter v. Burn Constr. Co.,* 85 N.M. 27, 31, 508 P.2d 1324, 1328 (Ct.App.1973) (stating

that the discovery rules are liberally construed to enable parties to easily obtain the relevant facts before trial). The party claiming privilege has the burden of establishing that a communication is protected as an exception to the ordinary rule. *See Piña,* 2001–NMCA–055, ¶ 24, 130 N.M. 661, 29 P.3d 1062.

■ {14} Attorney-client privilege in New Mexico is expressly provided and governed by court rule. *Pub. Serv. Co. of N.M. v. Lyons (Lyons),* 2000–NMCA–077, ¶¶ 11–14, 129 N.M. 487, 10 P.3d 166 (discussing the difference between New Mexico's approach to privileges and the federal rule for privilege, which is based on common law); *cf.* Fed.R.Evid. 501 ("Except as otherwise required ..., the privilege ... shall be governed by the principles of the common law[.]"). Rule 11–503(B) provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." The elements of attorney-client privilege, as reflected in Rule 11–503(B), are (1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client. *See* 1 Rice, *supra,* § 2:1, at 8–10 (discussing the proposed Federal Rule of Evidence 503(b), which is almost identical to New Mexico's Rule 11–503(B)). Rule 11–503 provides other guidance, which we will discuss as it applies to our analysis below. We now turn to the common interest doctrine.

### a. Common Interest Doctrine

{15} Rule 11–503(B)(3) recognizes that the attorney-client privilege may apply to a communication made by a client or the client's lawyer "to a lawyer representing another in a matter of common interest." New Mexico appellate courts have not had occasion to address the common interest doctrine. Therefore, though we are not bound by federal law and though the federal rule of privilege does not include a rule comparable to Rule 11–503, we find guidance in cases that construe the federal attorney-client privilege.

*See Breen v. Carlsbad Mun. Sch.*, 2005–NMSC–028, ¶ 14, 138 N.M. 331, 120 P.3d 413 ("Federal case law is certainly informative, but only to the extent it is persuasive.").

{16} Also known as the joint defense privilege, the common interest rule protects the "confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989). Under the common interest doctrine, documents disclosed to a third party may be protected by the privilege if the party resisting discovery demonstrates that the documents were created during the course of a joint defense effort between the resisting party and the third party and that the documents were designed in furtherance of that effort. *See Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042–43 (10th Cir.1998).

{17} Here, the district court concluded that "[GE] and UNC were not aligned in defense against a common opponent during the Geolex investigation and acquisition of UNC." In light of the following, however, we believe that the district court viewed the doctrine too narrowly. We conclude that under the facts of our case, the common interest doctrine may apply to documents protected by the attorney-client privilege.

{18} The common interest rule *does not require that actual litigation be in progress*; rather, the rule applies whenever more than one client share a common interest about a legal matter. *Schwimmer*, 892 F.2d at 243–44 (holding that the protection provided by the privilege extends to communications made in confidence to an accountant assisting lawyers who were conducting a joint defense on behalf of the communicating clients in regard to the government's initial investigation of the clients). In this manner, the common interest doctrine serves the purpose of the privilege, which is to encourage the free flow of information between attorney and client. *Id.* "A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974). A third party to whom privileged disclosures are made under the common interest doctrine may be a nonparty to any anticipated litigation and may be a legal entity distinct from the client who receives the legal advice. *Id.*

{19} In our case, Appellants entered into a common interest agreement for the purpose of addressing the legal considerations of the environmental conditions at the mine sites. Generally, we conclude that GE's joining forces with UNC to address the legal ramifications of existing environmental conditions is sufficient to allow GE to invoke the common interest rule to protect privileged documents that have been disclosed to UNC. In order for the common interest rule to protect a communication, however, Appellants must establish (1) that each document contains a privileged communication and (2) that each document disclosed to UNC was designed to further the common legal interest. After review of the record, we are unable to conclude that GE has met its burden to show that privilege applies to each of the documents contained in the Geolex Materials. *Cf. Hartman*, 1997–NMCA–032, ¶ 25, 123 N.M. 220, 937 P.2d 979 (concluding that the district court did not abuse its discretion in ordering production because the resisting party failed to carry its burden to show that the work-product doctrine applied to each document). Nor has GE established that each document disclosed to UNC was designed to further a common legal interest. We explain below. Because the district court did not rule on the issue of attorney-client privilege as applied to each communication contained in the Geolex Materials and because the court thus did not make all of the necessary findings, we remand to the district court for further consideration in light of this opinion. *Cf. Piña*, 2001–NMCA–055, ¶¶ 23–24, 130 N.M. 661, 29 P.3d 1062 (stating that "[f]ailure to adequately support a claim of privilege thwarts both the adversarial process and meaningful independent judicial review and justifies denial of the claim of privilege" but remanding to provide the plaintiff

an opportunity to reassert properly the physician-patient privilege).

{20} First, as observed by the district court, a valid underlying privilege must exist for a document to be protected from discovery by the common interest doctrine. The document must meet each element of the attorney-client privilege. Second, to preclude discovery of disclosed documents under the common interest doctrine, the party resisting discovery must demonstrate that the documents were created during the course of a joint-defense effort and that the documents were designed in furtherance of that effort. *Grand Jury Proceedings,* 156 F.3d at 1042–43. Appellants have the burden of showing that a valid underlying privilege exists as to each document and that each disclosed document was intended to further the common *legal* interest. *See Duplan,* 397 F.Supp. at 1172; *Piña,* 2001–NMCA–055, ¶ 24, 130 N.M. 661, 29 P.3d 1062; *see also State v. Gallegos,* 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct.App.1978).

{21} Our review of the record does not indicate that Appellants have met their burden with respect to each document. To begin, we are unable to determine from the record whether each document consists of the most basic element of privileged material, that is, a communication for purposes of Rule 11–503. *See* Douglas R. Richmond, *The Attorney–Client Privilege and Associated Confidentiality Concerns in the Post–Enron Era,* 110 Penn St. L.Rev. 381, 386 (2005) ("[A] court examining a party's privilege claims must scrutinize each communication independently."); *cf. State v. Roper,* 1996–NMCA–073, ¶ 8, 122 N.M. 126, 921 P.2d 322 (discussing the definition of "communication" for purposes of Rule 11–504 NMRA). Appellants' general assertions that every document contained in the Geolex Materials is a communication related to legal advice or a statement of an attorney's mental impressions are overly broad and do not provide a sufficiently detailed explanation of the privilege asserted. *See Piña,* 2001–NMCA–055, ¶ 24, 130 N.M. 661, 29 P.3d 1062 (stating that a privilege log and supplemental affidavits must demonstrate with detail an objectively reasonable basis for asserting privilege as to each withheld communication).

{22} In addition, a communication protected by the privilege must have been made in confidence between privileged persons. *See* Rule 11–503(B)(1)–(5). *Compare Schwimmer,* 892 F.2d at 244 (concluding that the defendant carried his burden of showing that he furnished information to an accountant hired by the attorney of the co-defendant, with whom the defendant shared a joint interest, and that the information he provided was thus protected by the attorney-client privilege), *with United States v. Ackert,* 169 F.3d 136, 138–40 (2d Cir.1999) (holding that attorney-client privilege did not extend to a tax advisor because the attorney was not relying on the advisor to translate or interpret information given to the attorney by his client), *and Occidental Chem. Corp. v. OHM Remediation Servs. Corp.,* 175 F.R.D. 431, 436–37 (W.D.N.Y.1997) (holding that attorney-client privilege did not extend to a company hired to produce a remediation plan because the purpose of the report was not to put information gained from the client into usable form for the attorneys to render legal advice but, rather, to collect information that was not directly obtainable from the client). We are unable to determine from the record whether the persons who engaged in the alleged communications fall within the relationships identified in Rule 11–503(B)(1)–(5). *See United States v. Kovel,* 296 F.2d 918, 922–23 (2d Cir.1961) (concluding that the client's communications with the accountant hired by his attorney were privileged as long as the nature of the advice sought was legal and as long as the advice sought was the lawyer's; remanding for an evidentiary hearing to establish how the client "came to be communicating" with the accountant); *United States v. Chevron Texaco Corp.,* 241 F.Supp.2d 1065, 1071 (N.D.Cal.2002) (stating that "*Kovel* did not intend to extend the privilege beyond the situation in which an accountant was interpreting the client's otherwise privileged communications or data in order to enable the attorney to understand those communications or that client data").

{23} Further, Appellants must show that each communication was made to

serve a legal interest. The privilege protects communications generated or received by an attorney giving legal advice but does not protect communications derived from an attorney giving business advice or acting in some other capacity. *See Duplan*, 397 F.Supp. at 1161 ("[A] communication between an attorney and a client is not privileged unless it is necessary for the rendition of a legal opinion or legal advice."); *id.* at 1167 ("[A]ttorney-client privilege does not attach where the ... attorney is giving technical or business, as opposed to legal, advice."); Richmond, *supra*, at 390 (stating that the privilege does not "shield from discovery communications generated or received by an attorney acting in some other capacity, or communications in which an attorney is giving business advice rather than legal advice"); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 415, 417 (N.D.Ill.2006) ("[T]here need be no fear that the 'common interest' doctrine will prevent business documents and information from being discoverable.").

■ {24} Finally, as observed in paragraph 18 of our opinion, Appellants must also show that GE and UNC had an identical legal interest in the subject matter of each privileged communication that was disclosed to UNC. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Duplan*, 397 F.Supp. at 1172, 1185 (stating that the overlap of a commercial interest does not negate an existing legal interest and that the district court will apply the guidelines as it performs an in camera inspection of each document); *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D.Del.2004) (concluding that the common interest doctrine did not apply where the documents were disclosed during negotiations with a buyer, since the disclosures were not made in an effort to formulate a joint defense but, rather, were made to encourage investment); *cf. In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 425–26 (discussing the court's in camera review of five pages from a memorandum and the court's determinations that portions discussing the legal ramification of the proposed acquisition of a company were privileged but that those portions addressing commercial concerns were not); *id.* at 432 (discussing whether hypothetical situations are privileged and asking if they were based on specific situations faced by the client that implicitly reveal client confidences, strategies, mental processes, and tactics or if they were the "unsolicited, creative efforts of enterprising lawyers, drawing on their own knowledge of the industry derived from other engagements with other clients"). Here, the district court, in making this determination, was required to consider each communication for which GE sought to invoke the attorney-client privilege and the common interest doctrine.

■ {25} The purpose of the privilege, to encourage full and frank communication between a client and its attorney, *Schwimmer*, 892 F.2d at 243, provides the guiding principle in determining whether a communication is protected. Privilege attaches only if the client has established "[t]he relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed." *Id.* We summarize the burdens that GE and Travelers must meet below. On remand, Appellants must establish that each document meets the elements of privilege. *See* Richmond, *supra*, at 386 ("There is no blanket privilege covering all attorney-client communications. The client must claim the privilege with respect to each communication at issue, and a court examining a party's privilege claims must scrutinize each communication independently." (footnote omitted)). Once the district court has determined that a document is privileged, the burden shifts to Travelers to show that the privileged document was voluntarily disclosed to UNC or another third party. *See* Rule 11–511. If Travelers meets its burden to show that waiver occurred through disclosure of a particular communication, the burden falls back to GE to show that the privileged document disclosed to UNC concerned a subject in which GE and UNC shared an identical legal interest.

■ {26} To the extent Appellants argue that in camera review is unnecessary

because the attorney-client privilege extends to all of the Geolex Materials, we are not persuaded. If a party requests discovery of material that may contain both protected and unprotected information, the court may properly review the documents in camera. *See ChevronTexaco Corp.*, 241 F.Supp.2d at 1069 (acknowledging an in camera review of documents for which the defendant claimed attorney-client privilege and/or work-product protection); *Estate of Romero*, 2006–NMSC–028, ¶ 19, 139 N.M. 671, 137 P.3d 611 ("An in camera examination of the materials ... to determine whether the requested material is immune, may be necessary." (emphasis omitted)); *see also* Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 664 (4th ed.2001) (stating that in camera review to determine whether privilege or work product applies is an established and widely recognized practice that is increasingly frequent); *cf. Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005–NMSC–032, ¶ 21, 138 N.M. 398, 120 P.3d 820 (remanding for a determination, via in camera review if necessary, "of whether the communications ... were made in the course of the counselor's treatment of the victim for any emotional or psychological condition resulting from a sexual assault" (internal quotation marks and citation omitted)). "The claim of protection and privilege against such in camera review is not recognized." Epstein, *supra*, at 664.

{27} Under the circumstances of our case, in camera review may be particularly appropriate. Application of the privilege can be difficult when the client is a corporation seeking legal advice regarding a business transaction and when the client's attorney is in-house counsel who wears " 'two hats' " by performing a dual role of legal advisor and business advisor. *See ChevronTexaco Corp.*, 241 F.Supp.2d at 1069 (stating that when in-house attorneys wear " 'two hats,' " questions are raised about who the " 'client' " is in any particular communication). Similarly, application of the privilege can be more difficult when it concerns many documents. *Cf. Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 308–09 (N.D.Cal.1987) (addressing the privilege in regard to one attorney's opinion letter shared with a company propos-

ing to purchase a division of a defendant's business). "What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer.*" *Kovel*, 296 F.2d at 922. This determination can be properly made only with careful consideration of each document alleged to contain a privileged communication.

■ {28} Finally, we recognize that in camera review can be burdensome on the court; therefore, we acknowledge the district court's discretion to request a more detailed privilege log, which addresses the concerns expressed in this opinion, to assist in the court's evaluation of the privilege in regard to each document. *See Piña*, 2001–NMCA–055, ¶¶ 20–22, 24, 130 N.M. 661, 29 P.3d 1062 (stating that the resisting party "must assert the ... privilege with sufficient detail so that [the requesting party], and ultimately the trial court, may assess the claim of privilege as to *each* withheld *communication* "); *Hartman*, 1997–NMCA–032, ¶¶ 18–25, 123 N.M. 220, 937 P.2d 979 (discussing the detail necessary for a party to properly claim work-product immunity).

### b. Waiver

{29} Travelers argues, in the alternative, that GE waived any privilege that may have attached to the Geolex Materials when Killoran, GE's in-house counsel, testified in his deposition as UNC's Rule 1–030(B)(6) NMRA corporate representative. Travelers asserts that Killoran acquired knowledge about certain subjects from the Geolex Materials and that he later testified about these same subjects at his deposition. Thus, Travelers contends that Killoran must have relied on the Geolex Materials in his deposition and that the privilege is waived because the information was, at the least, partially disclosed.

{30} Preliminarily, we observe that the district court did not rule on this issue. The special master concluded, however, that GE waived any existing privilege when Killoran testified in regard to the same subjects addressed by the Geolex Materials. The special master reasoned that Killoran could not have "compartmentalized in his mind" the

information in the Geolex Materials, which he acquired as counsel for GE, from the information he gained through other sources as the corporate representative for UNC. We are not persuaded that this analysis is consistent with the standard in New Mexico. To the contrary, the standard in New Mexico recognizes that a party will necessarily make a decision as to whether or not to rely on information that the party already possesses before it offers evidence to prove the claim or defense. We clarify the standard below and remand for the district court to consider this issue in regard to each document that the court determines is protected by attorney-client privilege.

■■■ {31} To support a finding of waiver, New Mexico requires an offensive or direct use of privileged materials. *Lyons*, 2000–NMCA–077, ¶ 23, 129 N.M. 487, 10 P.3d 166; *see also* Rule 11–511 (stating that the holder of the privilege waives the privilege by voluntarily disclosing or consenting "to disclosure of any significant part of the matter or communication," unless the disclosure itself is a privileged communication); *Gingrich v. Sandia Corp.*, 2007–NMCA–101, ¶¶ 12–20, 142 N.M. 359, 165 P.3d 1135 (affirming the district court's ruling that a defendant waived attorney-client privilege when that defendant made " 'direct or offensive' " use of an attorney's report), *cert. denied*, 2007–NMCERT–007, 142 N.M. 330, 165 P.3d 327; *Skaggs v. Conoco, Inc.*, 1998–NMCA–061, ¶ 21, 125 N.M. 97, 957 P.2d 526 (stating that the defendants did not waive their privilege because there was no showing that they relied on the documents to prove their defense). In *Lyons*, this Court adopted the approach to waiver that was put forth in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 864 (3d Cir.1994). *Lyons*, 2000–NMCA–077, ¶¶ 21–22, 129 N.M. 487, 10 P.3d 166. We stated that waiver is recognized "only where a party 'seeks to limit its liability by describing that advice and by asserting that he relied on that advice.' " *Id.* ¶ 22 (quoting *Rhone–Poulenc*, 32 F.3d at 863); *see also Rhone–Poulenc*, 32 F.3d at 863 ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communica-

tion."). We construed the *Rhone–Poulenc* approach to waiver to include finding waiver "where direct use [of the privileged materials] is anticipated because the holder of the privilege must use the materials at some point in order to prevail." *Lyons*, 2000–NMCA–077, ¶¶ 22, 28, 129 N.M. 487, 10 P.3d 166 (stating that waiver depends on "the way in which the client will likely prove the assertion" and that the privilege is not waived if the client plans to prove its assertion in ways that do not include the privileged communication (internal quotation marks and citation omitted)); *see also Rhone–Poulenc*, 32 F.3d at 863 ("[I]n leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege."). Therefore, the question is whether Killoran directly used the knowledge he gained from any privileged documents in order to assert a claim or defense when he testified at his deposition.

■■■ {32} To support Travelers' assertion that Killoran waived the privilege by disclosure at the deposition, Travelers relies on Killoran's testimony at the hearing before the special master. In this hearing, Killoran testified that he had gained knowledge of the conditions at the mine sites through his review of the Geolex Materials. Killoran said, "I wouldn't have known anything about the sites apart from my own visual observation of four of the sites without having looked at the materials that Geolex generated or collected." Killoran acknowledged that he was asked questions about his knowledge of the mining sites at the Rule 1–030(B)(6) deposition. However, he stated that the questions at the deposition "were asked from the standpoint of UNC, what did UNC know." In Killoran's deposition, he stated that the sources of his information were individuals with whom he had spoken, documents that he had read, and site visits that he had made after the mines were closed. After review of the record, we are unable to determine as a

matter of law whether Killoran made direct use of privileged documents to support UNC's claims in his deposition.

{33} The special master found that the Geolex Materials related to the mine sites "whose cleanup and cleanup expense are the subject of at least a major part of the coverage claims" that UNC makes against Travelers. Because the Geolex Materials could have been used to assert UNC's claim against Travelers, we remand to the district court to determine whether Killoran relied on any documents that the district court has determined are privileged in order to support the claims against Travelers. We recognize that Killoran explained that he was not relying on the Geolex Materials at his deposition; rather, he asserted that he relied on information gathered from other sources. However, reasonable people could differ on the basis of the evidence in the record; thus, the question is one of credibility and fact, which we reserve for the district court. *See State v. Garcia*, 2005–NMSC–017, ¶ 27, 138 N.M. 1, 116 P.3d 72 ("[T]he trial court is in a better position [than is an appellate court] to judge the credibility of witnesses and resolve questions of fact[.]"); *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) ("[I]f the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder[.]"); *Lyons*, 2000–NMCA–077, ¶ 31, 129 N.M. 487, 10 P.3d 166 (reversing and remanding for the district court to apply the proper standard in determining whether the attorney-client privilege had been waived); *cf. Gingrich*, 2007–NMCA–101, ¶ 16, 142 N.M. 359, 165 P.3d 1135 (holding that the district court did not err in finding that the defendants relied on the report to support their defense).

{34} Finally, we recognize the difficulty inherent in determining whether the privilege was waived when a party asserts a blanket privilege over multitudes of documents. We cannot conclude that Travelers has failed to meet its burden to show waiver when the privileged documents have yet to be identified. *See Poteet v. Roswell Daily Record, Inc.*, 92 N.M. 170, 172, 584 P.2d 1310,

1312 (Ct.App.1978) (stating that once the defendant made a prima facie showing of privilege, the plaintiffs had the burden to show waiver).

{35} GE also argues that Killoran could not have waived GE's privilege in his deposition because he was not authorized to waive GE's privilege. GE asserts that Killoran was neither an officer nor a director of GE and that no officer or director of GE authorized Killoran to waive its privilege. We are not persuaded.

{36} The client is the holder of the privilege. *See* Rule 11–503(B); *In re Grand Jury Proceedings, Vargas*, 723 F.2d 1461, 1466 (10th Cir.1983) (stating that an attorney cannot waive the privilege without the client's consent). The privilege may be claimed by the client or the lawyer at the time of the communication, but the lawyer may claim the privilege only on behalf of the client. Rule 11–503(C). The client who holds a privilege waives the privilege if the client "voluntarily discloses or consents to disclosure of any significant part of the matter or communication." Rule 11–511. In our case, GE asserts that Killoran was not authorized to waive the privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (stating that the authority to waive the privilege lies with corporate management and that this authority is ordinarily exercised through the officers and directors). In light of Rule 11–511, we ask whether GE consented to disclosures that may have been made by Killoran in his deposition testimony. We conclude that the district court could have determined that GE consented to Killoran's disclosures when GE assigned him to represent UNC's interests and allowed him to testify as UNC's corporate representative. *See* Restatement (Third) of the Law Governing Lawyers § 79 cmt. c (2000) ("The privilege is waived if the client's lawyer ... discloses the communication acting under actual or apparent authority. A lawyer generally has implied authority to disclose confidential client communications in the course of representing a client[.]"); Epstein, *supra*, at 270 (stating that the attorney is ordinarily responsible for asserting the

privilege on the client's behalf and that "it is through actions taken or not taken by counsel that courts find a waiver has occurred"); Richmond, *supra,* at 432 (stating that it is "generally accepted that a lawyer may voluntarily waive the privilege for the client"); Richmond, *supra,* at 436 (recognizing that under principles of agency law, a client is ordinarily bound by its attorney's actions); *cf.* 2 Paul R. Rice, *Attorney–Client Privilege in the United States* § 9:34, at 9–181 to –182 (2d ed. 2007) ("Whether the expert has relied upon privileged documents exposed to him is a question of fact to be decided by the presiding judge. In making this decision the judge should not simply rely on the resisting party's representation that the documents were not considered by the expert in forming his opinion."). Again, this appears to be a question for the district court that should be addressed only after the court has determined which, if any, of the Geolex Materials are privileged. We now address the parties' contentions regarding work-product immunity.

## 2. Work–Product Doctrine

{37} Appellants raise three points with regard to work product. First, Appellants challenge the district court's conclusion that the opinions of Geolex and its president, Alberto Gutierrez, are not opinion work product. Second, Appellants contend that the entirety of the Geolex Materials is protected as opinion work product "because it 'reflects' the mental impressions, conclusions, opinions and legal theories of Geolex, as well as those of ... Killoran." Third, Appellants assert that Travelers failed to establish the substantial need and undue hardship that are necessary for obtaining discovery of ordinary work product. We review the relevant law before addressing each argument.

■■■■■ {38} The work-product doctrine is separate and distinct from attorney-client privilege. Richmond, *supra,* at 390; *see also* Rule 1–026(B)(4) (providing that "a party may obtain discovery of documents and tangible things *otherwise discoverable* ... and prepared in anticipation of litigation" only upon a showing of substantial need and inability to obtain the substantial equivalent

by other means without undue hardship (emphasis added)). The work-product rule is an immunity that protects documents and tangible things prepared in anticipation of litigation by or for a party or its representative, including materials prepared by the attorney's agents and consultants. Rule 1–026(B)(4); Richmond, *supra,* at 391 & n. 69 (citing *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 662 (3d Cir.2003)); *see also Hartman,* 1997–NMCA–032, ¶ 19, 123 N.M. 220, 937 P.2d 979. Broader protection is afforded by the work-product doctrine because it is not limited to confidential communications between an attorney and a client. Richmond, *supra,* at 390–91. The protection of an attorney's work product is important because it protects the attorney's privacy "in doing whatever is necessary to properly prepare his case." *Carter,* 85 N.M. at 31, 508 P.2d at 1328. A party asserting work-product protection bears the burden of establishing that the rule applies for each document. *Hartman,* 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979. A party can meet this burden by submitting detailed affidavits that show the existence of precise facts supporting the claim of immunity. *Id.*

■■■■■ {39} Ordinary work product, or "non-opinion" work product, has a qualified immunity. *Id.* ¶ 19. A party may obtain ordinary work product of another party "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 1–026(B)(4). After a discovering party has made the required showing and the court orders discovery, the court is charged with protecting "the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* Opinion work product has "nearly absolute immunity." *Hartman,* 1997–NMCA–032, ¶ 19, 123 N.M. 220, 937 P.2d 979. We apply these rules to the case at hand.

{40} In our case, the district court concluded that the Geolex Materials are protected by the work-product rule because they

were prepared by Geolex for Killoran in anticipation of imminent litigation involving UNC. Travelers does not contest the district court's determination that the Geolex Materials constitute work product. Therefore, we do not address this issue. We turn directly to Appellants' contentions regarding opinion work product.

### a. Opinions of Geolex and Gutierrez

{41} Appellants argue that the mental impressions, conclusions, opinions, and legal theories of Geolex and Gutierrez are protected as work product. We agree. As noted by Appellants in their reply brief, Travelers appears to concede this issue because Travelers declined to address this argument in its answer brief. Moreover, at oral argument, Travelers agreed that it was not entitled to the mental impressions and opinions of Geolex or Gutierrez concerning the anticipated litigation. We thus address the issue briefly.

{42} The plain language of Rule 1–026(B)(4) protects "the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." A party's representative includes a consultant. *Id.* Therefore, we conclude that to the extent Geolex's or Gutierrez's mental impressions and opinions regarding the litigation are memorialized or reflected in the Geolex Materials, they are protected as opinion work product.

{43} Travelers does not argue that the scope of immunity provided for a consultant's mental impressions differs from the nearly absolute immunity provided for an attorney's mental impressions. Accordingly, we do not address the scope of the immunity provided for the mental impressions and opinions of Geolex and Gutierrez. *Cf.* Rule 1–026(B)(6) (stating that "[a] party may discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial, only as provided in Rule 1–035 NMRA or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means").

### b. The Geolex Materials as a Whole

{44} Appellants argue that the district court erred when it concluded that the entirety of the Geolex Materials was not protected as opinion work product. Appellants contend that the listing of the information contained in the Geolex Materials "demonstrates that it consists entirely of communications or materials reflecting the mental impressions, opinions and conclusions of G.E. attorney William Killoran as well as reports and other materials reflecting the mental impressions, opinions and conclusions of Killoran's environmental geotechnical investigator and agent Geolex." We are not convinced.

{45} Appellants appear to argue that the district court abused its discretion by ordering an in camera review because Gutierrez's affidavit and the privilege log undisputedly established that all of the Geolex Materials constituted opinion work product. Our review of the affidavit and the privilege log lead us to conclude otherwise. In pertinent part, the affidavit generally describes the documents at issue, which include a contract file, a general file, a file containing the final report submitted to GE, six files that are site-specific, and a file containing historical photographs and photographs taken by Gutierrez. In addition, the affidavit describes related computer files, which contain documents received or generated by Geolex during the course of its work for GE. The affidavit does not contain specific details of each document contained in the Geolex Materials. Thus, the district court cannot rely on the affidavit to determine which documents within the Geolex Materials might be subject to discovery as ordinary work product.

{46} Our review of the privilege log also reveals deficiencies in the descriptions of documents contained in the Geolex Materials. Out of 154 documents identified from the Geolex Materials, GE asserts that each and every document is protected both as work product and by attorney-client privilege. The date, the author, and the recipient(s) of each document are identified, and the type of communication is indicated. There is no indication, however, as to the subject matter or purpose of each document. For example, the

first entry is a "[l]etter prepared at direction of counsel regarding projects" written by Scott Ernest, a person of unidentified status, and received by the Geolex credit manager. Another entry is an "[e]-mail prepared at direction of counsel" written by Gutierrez and received by Liz Hill, another person of unidentified status. The remainder of the entries are similar in their general assertions for protection. None of the entries specifically asserts claims of opinion work product for any document. A party asserting work-product protection bears the burden of establishing that the rule applies for *each* document by showing the existence of precise facts in support of the claim of immunity. *Hartman,* 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979. To the extent opinion work product may be inferred from a description of a document, we find little detail in the affidavit or the privilege log that would enable the district court to definitively conclude that a particular document constitutes opinion work product. Conclusory and blanket assertions of privilege and work-product protection are insufficient for the court to make a determination regarding opinion work product without an in camera review. *See* Fed.R.Civ.P. 26 advisory committee note (1993 Amendments) (discussing Subdivision (b)(5), regarding privilege logs, and stating the following: "Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of the documents."); *see also* Epstein, *supra,* at 664 (stating that an index must be adequate to enable the court to determine whether all the elements of the privilege are met); *cf. Hartman,* 1997–NMCA–032, ¶ 24, 123 N.M. 220, 937 P.2d 979 (concluding that the affidavits were insufficient to support the immunity claim because they were "conclusory in form, self-serving, and lack[ed] detailed foundations for their conclusions").

█ {47} As noted by Travelers, the Geolex Materials include field inspection reports summarizing the environmental conditions at each mine site. The Geolex Materials also contain plats, photographs, and costs associated with remediation. This type of factual information, if it does not reflect mental impressions or opinions, is subject to discovery once the discovering party has made the required showing of substantial need and undue hardship. We thus conclude that the district court did not abuse its discretion by ordering production of the Geolex Materials for an in camera review in order to determine which documents are opinion work product. We now address Appellants' argument that Travelers failed to make the showing necessary for obtaining discovery of GE's ordinary work product.

### c. Substantial Need and Undue Hardship

{48} Appellants contend that Travelers failed to establish the substantial need or undue hardship necessary for obtaining discovery of the ordinary work product contained in the Geolex Materials. Appellants assert that Travelers failed to meet the "heavy burden" because it offered no evidence in support of need or hardship and because argument of counsel is not enough to meet its burden. Appellants also assert that the district court abused its discretion in finding that "[c]onditions at the mines since 1997 simply cannot be ascertained in 2006 due to the passage of time," a statement made by the district court in its conclusions of law. We are not persuaded.

█ {49} "Ordinary work product is discoverable when the requesting party has substantial need for the material and is unable to obtain its substantial equivalent without undue hardship." *State ex rel. Brandenburg v. Blackmer,* 2005–NMSC–008, ¶¶ 11–19, 137 N.M. 258, 110 P.3d 66 (discussing the work-product doctrine in the civil context, as compared to the work-product doctrine in the criminal context); *see* Rule 1–026(B)(4). New Mexico cases provide little guidance regarding the necessary showing for substantial need or undue hardship. In *Knight v. Presbyterian Hospital Center,* 98 N.M. 523, 525–26, 650 P.2d 45, 47–48 (Ct.App.1982), this Court discussed substantial need and undue hardship in regard to witness statements,

and we held that the plaintiff failed to make any showing of substantial need or undue hardship. *Id.* (observing that the plaintiff merely argued that the statements did not constitute work product). We provided some guidance for establishing need and hardship in regard to witness statements by observing that substantial need and undue hardship could be established "[i]f a witness testifies that the relevant and source facts given in the statement are not clear in the witness'[s] memory or have been forgotten." *Id.* at 526, 650 P.2d at 48. We further posited that with such testimony, the plaintiff could have sought an order to produce the witness's previous statement and that the court, in the exercise of its discretion, could then have reviewed the statement and ruled upon the motion. *Id.* (reversing and remanding for an in camera review to determine which statements were made spontaneously and thereby did not constitute work product).

▇▇▇▇ {50} Generally, "[t]he discovering party must specifically explain its need for the materials sought." Richmond, *supra,* at 392. The degree of need and hardship that must be established "varies according to the nature of the material sought." Epstein, *supra,* at 549. Often, a court's determination regarding need and hardship is made in a conclusory fashion or by implication. *Id.* However, the nature of the need should be specifically articulated, and an explanation must be made as to why "alternative less intrusive means" will not result in obtaining the work-product material. *Id.* at 549–50. Ultimately, the district court must weigh the interests of the respective parties, including need, available alternative sources, the parties' relative resources, and the need to protect the resisting party's expectation of confidentiality. *Id.* at 567; Richmond, *supra,* at 392.

▇▇▇▇ {51} With these guidelines in mind, we cannot conclude that the district court erred when it determined that Travelers established the requisite need and hardship to justify obtaining ordinary work product. The interests of the parties concern the underlying action against Travelers, which involves the cleanup and cleanup expense related to environmental conditions at the mine

sites. The district court determined that the Geolex Materials may contain information regarding the nature and extent of the environmental conditions, as well as a valuation of the damage, existing at the mine sites in 1997. The court further determined that "it would be all but impossible" to currently ascertain the conditions as they existed at the mine sites in 1997. Appellants dispute this determination. However, evidence in the record supports the court's ruling.

{52} In Killoran's deposition, he discussed the types of environmental conditions at issue in the underlying action. He stated that the regulatory authorities are concerned about groundwater impacts and that in their inquiries, the authorities have referred to "piles of material left on the site," including "noneconomic material piles." Killoran identified the piles as "piles of topsoil, piles of overburden, [and] an ore pile." He also stated that concerns were expressed in regard to pond areas and pads on which mining structures and operations were located. A reasonable person could infer from Killoran's statements regarding these relevant environmental conditions, which are exposed to the weather, that the passage of more than eight years could markedly affect these conditions. Thus, we conclude that the district court did not abuse its discretion when the court determined that the passage of time created undue hardship in obtaining the substantial equivalent of the Geolex Materials.

{53} Appellants argue that Travelers can obtain the substantial equivalent without undue hardship because GE produced the documents that were provided to Geolex for the purposes of conducting its evaluation. Below, Travelers argued that obtaining the substantial equivalent is "all but impossible" because the documents produced are numerous and poorly organized and because the documents produced were stored for years in a "pole barn," where they were exposed to hantavirus and where some documents were water-damaged beyond use. The condition of the documents as described by counsel was not materially disputed as a generally accurate depiction of the condition of the documents that had been produced. *Cf. State v. Pacheco,* 2006–NMCA–002, ¶ 3, 138

N.M. 737, 126 P.3d 553 (assuming the fact as stated in the defendant's motion when the state did not contradict the defendant's assertion), *rev'd on other grounds*, 2007–NMSC–009, ¶¶ 28, 36, 141 N.M. 340, 155 P.3d 745. Travelers also argued that UNC currently has only two employees but that when Geolex conducted its investigation, it had access to all of the employees on the job in 1997. Again, Appellants do not dispute these underlying facts. These facts are sufficient to support the district court's findings regarding substantial need and undue hardship.

{54} Appellants also argue that Travelers failed to show substantial need and undue hardship because Travelers "offered no declaration or other evidence of either substantial hardship or of its inability to acquire substantially equivalent information." Appellants rely on *Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n. 4 (9th Cir.2002), to argue that counsel's arguments are insufficient to make the necessary showing. *Barcamerica* is not helpful under the facts of our case. *See id.* (stating that the arguments and statements of counsel made on appeal "are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment" (internal quotation marks and citation omitted)). Appellants provide no authority for their assertion that Travelers is required to offer evidence in regard to a discovery motion when the undisputed underlying facts support the district court's rulings, and we have discovered none in our own research. To the contrary, Travelers can meet its burden by specifically articulating the nature of its need and explaining why Travelers cannot obtain equivalent information by other means. *See* Epstein, *supra*, at 549–50. Moreover, as discussed in paragraph 52 of our opinion, Killoran's statements in the record provided evidence to support the relevant fact disputed by Appellants. Thus, we conclude that this argument is without merit.

{55} Finally, in arguing that Travelers has failed to sufficiently establish need and hardship, Appellants rely on *Pinal Creek Group v. Newmont Mining Corp.*, No. CV–91–1764–PHX–DAE–(LOA), 2006 WL 1817000 (D.Ariz. June 30, 2006), an unpublished opinion, and *Adams v. Shell Oil Co.*, 132 F.R.D. 437 (E.D.La.1990). We are not persuaded that these cases are helpful under the facts of our case. In *Pinal Creek Group*, the documents protected as work product were discoverable because they had been provided to the testifying experts. *See* 2006 WL 1817000, at *7. Although that opinion appears to reach the right result, the analysis conflates the standard for discovery under the work-product rule and the standards for discovery of both testifying and nontestifying witnesses. *See id.* (stating that the discovering party demonstrated exceptional circumstances to overcome work-product immunity, that the discovering party had substantial need for the documents in order to cross-examine effectively the testifying experts, and that the discovering party was unable to obtain the documents by other means). *Compare* Fed.R.Civ.P. 26(b)(3) (requiring substantial need and undue hardship for discovery of documents protected by work-product immunity) *with* Fed.R.Civ.P. 26(b)(4)(B) (requiring "a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means" in order for that party to discover, through interrogatories or by deposition, facts known or opinions held by a nontestifying expert). Similarly, the court in *Adams* relied on the language of Fed.R.Civ.P. 26(b)(4)(B) to conclude that the discovering party was not entitled to test results because it failed to meet the "heavy burden" of showing exceptional circumstances. *Adams*, 132 F.R.D. at 442–43. Thus, we conclude that these cases are not helpful in our analysis.

### III. CONCLUSION

{56} We affirm the district court's order instructing Appellants to produce the documents for in camera review. We remand for further proceedings in light of this opinion.

{57} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL D. BUSTAMANTE, Judges.