2001-NMCA-055

29 P.3d 1062

**Bernadette PIÑA, Plaintiff–Appellant,**

v.

**Charlene ESPINOZA, Defendant–Appellee.**

No. 20,738.

Court of Appeals of New Mexico.

June 29, 2001.

Certiorari Denied, No. 27,048, Aug. 6, 2001.

Kyle W. Gesswein, Las Cruces, NM, for Appellant.

William R. Anderson, Reeves, Chavez, Walker & Albers, P.A., Las Cruces, NM, for Appellee.

Manuel I. Arrieta, Miller, Stratvert & Torgerson, P.A., Las Cruces, NM, P. Scott Eaton, NM Defense Lawyers Association, Albuquerque, NM, William H. Carpenter, Michael B. Browde, NM Trial Lawyers Association, for Amicus Curiae.

## OPINION

ALARID, Judge.

{1} This case requires us to decide the extent to which a plaintiff in a personal injury action may be required to disclose confidential communications contained in her medical records. We take this opportunity to set out guidelines for discovery of physician-patient communications when the plaintiff has placed a medical condition at issue. Because we conclude that the trial court abused its discretion in ordering Plaintiff to execute a blanket release, we reverse.

## BACKGROUND

{2} Plaintiff sued Defendant alleging, *inter alia*, that Defendant's vehicle rear-ended Plaintiff's vehicle and that "[a]s a direct and proximate result of [Defendant's] negligence and the resulting collision, Plaintiff has suffered personal injury including past, present and future pain and suffering; past, present and future medical expenses; lost earnings and lost earning capacity, and loss of enjoyment of life."

{3} Defendant served interrogatories directing Plaintiff to identify each health professional who had treated Plaintiff for any reason in the five years preceding the accident. Defendant also served requests for production of documents, which included a request that Plaintiff execute a general medical release attached to Defendant's requests for production.

{4} Plaintiff responded to Defendant's discovery requests by serving objections and by filing a motion for protective order. Plaintiff's motion asserted that Plaintiff had an expectation of privacy in her medical records

and that her records were confidential under both Rule 11–504 NMRA 2001 and NMSA 1978, § 14–6–1 (1977). Plaintiff pointed out that Defendant's right of access "is no greater than that which is relevant." Plaintiff requested an *in camera* review of her medical records in order to maintain the privacy of non-relevant information. Plaintiff requested a protective order to prevent Defendant from using Plaintiff's medical records for any purpose other than the present litigation.

{5} Defendant filed a motion to compel and a Memorandum in Opposition to Plaintiff's Motion for Protective Order and in Support of Defendant's Motion to Compel. Defendant argued that Plaintiff had not shown good cause for a protective order. Defendant argued that "the physician-patient privilege is waived once the Plaintiff places her physical, mental or emotional condition at issue." Defendant argued that

> Plaintiff has placed her physical condition at issue by alleging in her complaint that "as a direct and proximate result of [Defendant's] negligence and the resulting collision, Plaintiff has suffered personal injury, including past, present, and future pain and suffering; past, present, and future medical expenses; lost earnings and lost earning capacity, and loss of enjoyment of life."

Defendant argued that discovery of Plaintiff's medical records was governed by the broad standard of Rule 1–026 NMRA 2001, rather than the more restrictive definition of relevance in the Rules of Evidence.

{6} In her response to Defendant's motion to compel, Plaintiff pointed out that Defendant was seeking information relating to Plaintiff's gynecological and obstetric conditions without allowing any protection for Plaintiff's privacy.

{7} The trial court denied Plaintiff's motion for a protective order and granted Defendant's motion to compel. The trial court found that "Plaintiff's medical bills and records are not privileged insofar as Plaintiff has placed her medical condition at issue." The trial court ordered Plaintiff to execute a

664

blanket release containing the following language:

> This [release] will authorize you to release all of my medical records, files and reports, including prognosis and diagnosis, hospital records, nurse's notes, x-rays, and any other information requested, together with copies of all medical bills incurred to REEVES, CHAVEZ, GREENFIELD & WALKER, P.A.

{8} Thereafter, Defendant filed a Motion to Dismiss, or Alternatively to Compel Discovery and Sanctions. Defendant cited the trial court's order denying Plaintiff's motion for protective order and granting Defendant's motion to compel. Defendant advised the trial court that Plaintiff had rewritten the release to restrict it to medical records relating to the automobile accident. Defendant argued that "sanctions are appropriate, including the sanction of dismissal."

{9} In her response, Plaintiff conceded that Defendant correctly stated the history of the discovery dispute. Plaintiff stated that she had supplemented her previous discovery responses by

A. Producing copies of all medical records in [her] possession regarding treatment for injuries she suffered in the collision [with Defendant];

B. Producing copies of all medical bills in [her] possession for treatment incurred as a result of the collision; and

C. [Identifying] . . . all medical providers for the previous five years.

Plaintiff conceded that she had not executed a release in the form ordered by the trial court, but asserted that she had executed a modified release "for every single provider of medical services related to this collision." Plaintiff asserted that "[i]n order to preserve her claim of physician-patient privilege and to preserve the issue of privilege, Plaintiff must not waive the privilege. By signing the Court-ordered medical release form, she would be waiving her physician-patient privilege and failing to preserve the issue of privilege."

{10} The trial court held a hearing on Defendant's motion for sanctions. The trial court inquired of Plaintiff's counsel whether Plaintiff's failure to comply with the trial court's discovery ruling was in dispute. Plaintiff's counsel conceded that Plaintiff had failed to comply with the trial court's prior order. The trial court then inquired "that being the case, then, where do we go from here, folks? What do we do?"

{11} Defendant's counsel laid out Defendant's position:

> I think you have got a number of options under Rule 37(B). The most severe of which is dismissal of this case. That's what I would suggest for a number of reasons. From my client's standpoint, I think it is—to offer anything less than a dismissal in this case, given a clear violation of this Court's unambiguous order, would not be appropriate. As I understand the Plaintiff's position, they want an order of dismissal as an avenue for appeal. One way or another, I think the Plaintiff intends to appeal this case. I would just [as soon] have it go straight up on appeal now and save my client the money, the time, the expense and potentially a second trial, instead of having to go through a trial and then having it taken up for appeal. So I think that, given what has happened in this case, I think dismissal is appropriate.

Plaintiff's counsel and the trial court then engaged in the following discussion:

> THE COURT: [Counsel], any response?
> PLAINTIFF'S COUNSEL: Plaintiff believes that she has a privilege regarding her medical records for seeing the gynecologist, OB/GYN, and if she gives them up, they're given up forever. She has lost her right to ever appeal or proceed. So her only option is to not comply with this Court's order if she wants to preserve those rights.
> THE COURT: Let me ask you, then, [Counsel], because ordinarily the matter in which I proceed would be to utilize perhaps a lesser sanction and see how it goes. And perhaps work our way towards a more severe sanction. There has been a suggestion that Plaintiff also really would like a dismissal so that they may pursue an appeal. If that is true, then, perhaps that would resolve the issue one way or another

with finality. And if not, at least [send] it back with some direction from the appellate courts. I don't know what would happen. But is it correct that you, in fact, would like to have a dismissal for the purpose of seeking an appeal?

PLAINTIFF'S COUNSEL: My client really would like to resolve her case and to proceed. I can't think of any other alternative that Your Honor has.

THE COURT: Okay. I take it for some reason you don't wish to respond to my inquiry?

PLAINTIFF'S COUNSEL: No, no. I can't suggest to you any other alternative. My client would like to be able to proceed with this case.

THE COURT: [Counsel], I understand. And I understand you disagree with my ruling, that's really not the point here today. I'm just trying to determine how we proceed from here. And it seems to me that a lesser sanction, if indeed there is going to be a continuing failure, the real purpose is to seek dismissal for appeal. It seems like there would be really a waste of court's time, your time and your client's money, ... to go further. If indeed what you really want is an appellate review. I have no problem with that if that's what you are seeking. I just would like to know so I can impose a lesser sanction and we can move on.

PLAINTIFF'S COUNSEL: I understand, Your Honor, and I'm trying to respond to that question. What I am saying to you is I can't think of a lesser remedy that I can recommend to the Court. My client would like to proceed with her case, but I can't suggest to you anything other than that.

THE COURT: I see. Thank you, sir.

The trial court then ruled as follows:

It is the view of the Court that really the—while this Court's general method of proceeding in these kinds of circumstances would be perhaps with a lesser sanction than this particular instance. It appears for the parties to resolve the dispute that apparently they're having in regard to this matter, as well as judicial economy, as well as to save the parties unnecessary fees and costs in pursuing the matter, it appears to me the appropriate thing to do at this time, then, is to dismiss the case.

*DISCUSSION*

▉ {12} We review discovery orders for abuse of discretion. *Public Serv. Co. of N.M. v. Lyons,* 2000–NMCA–077, ¶ 10, 129 N.M. 487, 10 P.3d 166. To the extent a discretionary decision is premised on a construction of a privilege, it presents a question of law, subject to de novo review. *Id.; see also N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶¶ 6–8, 127 N.M. 654, 986 P.2d 450.

{13} Rule 11–504(B) provides that "[a] patient has a privilege to refuse to disclose ... confidential communications, made for the purposes of diagnosis or treatment of the patient's physical, mental or emotional condition." This general rule of privilege is qualified by Rule 11–504(D)(3) which provides that "[t]here is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense." Rule 11–504(D)(3) does not speak in terms of waiver; where it applies there simply is no privilege.

▉ {14} Rule 1–026(B)(1) sets out the test for discoverability: to be discoverable, information must be (1) "relevant to the subject matter involved in the pending action" and (2) "not privileged." A physician-patient communication that is relevant to the subject matter of the pending action is not discoverable unless it also is "not privileged." In determining whether information is not privileged for purposes of discovery we look to the Rules of Evidence: "The rules with respect to privileges apply *at all stages of all actions,* cases and proceedings." Rule 11–1101(C) NMRA 2001 (emphasis added).

{15} We read Rule 11–504(D)(3) as imposing two limitations over and above Rule 1–026(B)(1)'s requirement of relevance to the subject matter of the action. First, as part of the Rules of Evidence, Rule 11–504(D)(3) necessarily incorporates the Rules' definition of relevance. Rule 11–504(D)(3) therefore

incorporates the standard of relevance that governs *admissibility at trial.* In contrast, Rule 1–026(B)(1) allows a far looser nexus: to be discoverable, information need not be admissible at trial so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Second, Rule 11–504(D)(3) requires that the communication be relevant to an issue of a medical condition that the patient will rely upon to establish "an element of the patient's claim or defense." Once again, Rule 11–504(D)(3) requires a tighter nexus than Rule 1–026(B)(1), which merely requires that the information subject to a discovery request be relevant to the "subject matter involved in the pending action." *See* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008 (2d ed.1994) (distinguishing between relevance to subject matter and relevance to issues).

{16} We think it likely that Plaintiff's physicians, including her gynecologist, will have recorded communications about issues of plaintiff's medical condition that are relevant to an element of Plaintiff's claims. By way of example, Plaintiff's gynecologist may have taken a general medical history and inquired about Plaintiff's use of prescription drugs. If Plaintiff denied or admitted having back or neck problems or taking pain medication in response to an inquiry by any physician, including her gynecologist, such information would be relevant to Plaintiff's allegation that "as a direct and proximate result of [Defendant's] negligence and the resulting collision, Plaintiff has suffered personal injury, including past, present and future pain and suffering; past, present and future medical expenses, lost earnings and lost earning capacity, and loss of enjoyment of life." Of course, we think it equally likely that Plaintiff's medical records will include information about matters such as family planning that may have little or no relevance to Plaintiff's personal injury claim.

■ {17} We conclude that the trial court erred by ordering Plaintiff to execute a blanket release. A blanket release does not adequately protect the privileged portions of Plaintiff's records in two significant respects. First, the proposed blanket release does not address the applicability of Rule 11–504(D)(3) on a communication-by-communication basis. Both the general rule of privilege set out in Rule 11–504(B) and the exception set out in Rule 11–504(D)(3) speak in terms of communications, not types of documents. Second, the proposed blanket release erroneously treats Plaintiff's entire medical condition as the unit of analysis. Rule 11–504(D)(3) is more subtle and requires a court to determine relevance in terms of "*an issue* of the physical, mental or emotional condition of the patient." (Emphasis added.) Plaintiff did not necessarily put her entire medical history in issue by filing a lawsuit which seeks damages for pain and suffering or loss of enjoyment of life.

{18} We emphasize that we are holding that Plaintiff did not *necessarily* put her entire medical history in issue. By claiming- or disclaiming-various items of damages, Plaintiff can exercise considerable control over the extent to which aspects of her medical history are put in issue. The extent to which Plaintiff has placed aspects of her medical history in dispute depends on the particular contours of her damage claims.

■ {19} It is important to recognize that under Rule 11–504 an assertion of the physician-patient privilege is an implicit admission that Plaintiff has not pleaded a claim to which the withheld information is relevant. As an alternative to attempting to over-ride a particular claim of privilege, Defendant may move for an order holding Plaintiff to her implied disclaimer of those claims to which the withheld information is material and relevant. *See Baca v. Velez,* 114 N.M. 13, 16–17, 833 P.2d 1194, 1197–98 (Ct.App.1992) (discussing judicial estoppel); *Westheimer v. Tennant,* 831 S.W.2d 880, 883 (Tex.App.1992) (noting that "fundamental fairness" may require plaintiff to elect between claiming privilege or asserting claim as to which privileged matters are material and relevant); *Hughson v. St. Francis Hosp. of Port Jervis,* 93 A.D.2d 491, 463 N.Y.S.2d 224, 231–32 (1983) (holding that mother of infant plaintiff may assert privilege to prevent inquiry during discovery into aspects of mother's medical history, but that successful assertion of privilege during discovery precludes mother or

infant from relying on privileged information at trial); *see also* Paul R. Rice, *Attorney–Client Privilege in the United States* § 11:6 n. 87 (2d ed.1999) (hereinafter Rice) (discussing procedure for forcing proponent of attorney-client privilege to elect between assertion of privilege or assertion of claims or defenses that are inconsistent with claim of privilege).

■ {20} Plaintiff argues that the proper procedure for determining the scope of the physician-patient privilege is *en masse* submission of Plaintiff's medical records for *in camera* review by the trial court. While we agree that *in camera* inspection has its place in the scheme established by Rule 1–026(B)(1), we believe that immediate resort to *in camera* inspection would unduly burden the trial court and would deny the opponent of the privilege the opportunity to test the claims of privilege through an adversarial process. Consequently, *in camera* review ordinarily should be reserved as the final stage of discovery litigation.

■ {21} In our view, the federal courts have identified a procedure that is workable and fair both to the party claiming the privilege and to the party seeking discovery:

> Whether a document is in fact privileged can be a difficult question, and if the parties engaging in discovery cannot resolve the issue informally, it must be decided by the tribunal conducting the proceeding in which the privilege has been asserted. The party seeking discovery cannot see the allegedly privileged documents—that might waive the privilege—so the dispute is usually resolved by submitting them to the tribunal *in camera*. This is an awkward, time-consuming process. To make the process work, and to encourage parties to minimize the number of documents that must be reviewed *in camera*, most tribunals require the party asserting the privilege to provide the party seeking discovery with a list or log that describes the document without disclosing the allegedly privileged communications it contains.

*PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship,* 187 F.3d 988, 992 (8th Cir. 1999) (discussing procedure for asserting attorney-client privilege). This procedure harmonizes Rule 1–026(B)(1) and Rule 11–504.

{22} We recognize that our Supreme Court has not amended Rule 1–026 to include a provision similar to Fed.R.Civ.P. 26(b)(5) (1993), which expressly provides that a party asserting a claim of privilege "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5) appears to be largely a codification of principles derived from cases interpreting the pre–1993 discovery provisions of the federal rules. *PaineWebber Group, Inc.,* 187 F.3d at 992. Because the pre–1993 discovery provisions of the federal rules were substantially similar to New Mexico's current discovery rules, we believe that it is appropriate to look to federal practice under the federal rules for guidance in harmonizing Rule 1–026(B)(1) with Rule 11–504. *See Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 997 P.2d 681, 694 (2000) (finding no abuse of discretion in lower court's reliance on federal practice in ordering line-by-line assertion of privilege notwithstanding absence in Kansas rules of procedure of provision similar to Fed.R.Civ.P. 26(b)(5)); *State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 554 (Mo.1995) (en banc) (observing that "[a]lthough as of yet there is no subsection in the Missouri Rules equivalent to the Federal Rule 26(b)(5), the justifications for the subsection are equally valid in Missouri's courts").

■ {23} On remand, Plaintiff should be provided with an opportunity to re-assert the physician-patient privilege. To the extent Plaintiff's medical records contain specific communications falling within Rule 11–504(D)(3), Plaintiff has an affirmative duty to disclose those communications in response to a discovery request that fairly encompasses such communications. To the extent Plaintiff's medical records contain communications as to which an objectively reasonable claim of privilege exists, Plaintiff may withhold those

communications subject to a properly asserted claim of privilege.

{24} As the party asserting the privilege, Plaintiff bears the burden of establishing that the privilege applies. *See State v. Gallegos*, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct.App.1978) (attorney-client privilege). Because Rule 11–504 speaks in terms of privileged "communications," not privileged documents, Plaintiff must assert the physician-patient privilege with sufficient detail so that Defendant, and ultimately the trial court, may assess the claim of privilege as to *each* withheld *communication*. Plaintiff must provide a privilege log that identifies each withheld communication. *See generally,* Rice, § 11:6. Plaintiff's privilege log together with any supplemental affidavits must affirmatively demonstrate an objectively reasonable basis for each assertion of privilege. *See Hartman v. Texaco, Inc.,* 1997–NMCA–032, ¶¶ 18–25, 123 N.M. 220, 937 P.2d 979 (discussing level of detail required to properly assert work-product immunity). Plaintiff's privilege log must be signed as required by Rule 1–011 NMRA 2001. ("Every pleading, motion and *other paper* of a party represented by an attorney, shall be signed by at least one attorney of record . . . .") (emphasis added). Failure to adequately support a claim of privilege thwarts both the adversarial process and meaningful independent judicial review and justifies denial of the claim of privilege. A privilege log prepared in good faith and in sufficient detail should eliminate many privilege disputes.

{25} We expressly disapprove of the practice of permitting the proponent of a privilege to rely on an initial conclusory assertion of a privilege and to gradually unveil the basis for her claims of privilege. *See* Rice, § 11:6 at 45–47 (discussing attorney-client privilege). This practice delays resolution of privilege issues and is unfair to the opponent of the privilege, who should not be forced to engage in costly motion practice in order to obtain basic information necessary to assess claims of privilege. In the absence of a stipulation establishing a different deadline, the proponent of a claim of privilege must fully set out the basis for the claim of privilege no later than the date provided in the Rules of Civil Procedure for responding to a particular discovery request. *See, e.g.,* Rule 1–033(A) NMRA 2001 ("Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer."); Rule 1–034(B) NMRA 2001 ("The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated.").

{26} In reviewing medical records *in camera*, judges may lack the medical expertise to decide which communications are relevant to an element of a party's claim or defense. Similarly, judges may not look at the matter with an advocate's eye. *See State v. Orona*, 92 N.M. 450, 452, 589 P.2d 1041, 1043 (1979) (indicating that only an advocate can determine what material is useful to the defense). Where the relationship of physician-patient communications to an element of a claim or defense is not immediately apparent, the trial court may require expert affidavits explaining why various communications would be (or would not be) relevant to an element of a claim or defense. *John Pierce, PPA v. Whitney St. Assocs.*, 2000 WL 839980, * 2 (Conn.Super.Ct.2000) (noting that opponent of privilege had not come forward with "case specific facts" demonstrating relevance of privileged information to issues in controversy). The trial court may consider appointment of an expert pursuant to Rule 11–706 NMRA 2001 or a special discovery master pursuant to Rule 1–053 NMRA 2001.

{27} Rule 11–504(D)(3) provides a limited exception to the physician-patient privilege based on concerns of fairness to a patient-litigant's opponent. The concerns of fairness to opposing parties that motivate this exception are fulfilled by disclosure to the patient's opponent. Rule 11–504(D)(3) deems certain physician-patient communications non-privileged; it does not affect their status as confidential communications or mandate disclosure of otherwise privileged information to the world at large. Thus, even where disclosure is ordered by the trial court, the privacy interests that led the Supreme Court to pro-

mulgate Rule 11–504(B) survive any limited disclosure to a party-opponent during discovery and may provide good cause for entry of a protective order pursuant to Rule 1–026(C) NMRA 2001. Entry of a protective order may allay many of the concerns of the proponent of the privilege and facilitate informal resolution of privilege issues.

{28} The above guidelines are not immutable. They may be modified as required by the circumstances of a particular case and, as always, should be administered "to secure the just, speedy and inexpensive determination of every action." Rule 1–001 NMRA 2001. We encourage the parties, subject to court approval, to stipulate to simplified or streamlined procedures for resolving privilege claims.

## PROCEDURAL ISSUES

[13] {29} In our calendaring notice, we asked the parties to brief the issue of whether the collateral bar doctrine, *State v. Cherryhomes*, 114 N.M. 495, 498, 840 P.2d 1261, 1264 (Ct.App.1992), precluded review of the trial court's order dismissing Plaintiff's complaint. Traditionally, the collateral bar rule applies only to citations for *criminal* contempt. *In re Novak*, 932 F.2d 1397, 1400–01 (11th Cir.1991). Although the sanction of contempt was available to the trial court, Rule 1–037(B)(2)(d) NMRA 2001, the trial court did not hold Plaintiff in criminal contempt. Thus, the traditional predicate for application of the collateral bar rule is not present.

■■■ {30} Further, "the collateral bar rule presupposes that adequate and effective remedies exist for orderly review of the challenged ruling; in the absence of such an opportunity for review, the [alleged] contemnor may challenge the validity of the disobeyed order 'on appeal.'" *In re Novak*, 932 F.2d at 1401. Defendant has not cited, and we are not aware of, any statute or rule granting Plaintiff an immediate appeal as a matter of right from the trial court's order denying her motion for protective order and granting Defendant's motion to compel. Defendant concedes that Plaintiff petitioned the Supreme Court for a writ of superintending control, which the Supreme Court denied. We realize that Plaintiff could have pursued an interlocutory appeal. However, in view of the discretion vested in the trial court in certifying an issue for interlocutory appeal, NMSA 1978, § 39–3–4(A) (1971, as amended through 1999) and the discretion that this Court exercises in accepting a certification, Rule 12–203 NMRA 2001, we are satisfied that, as a practical matter, Plaintiff had no means of challenging the trial court's order denying her claim of privilege other than to disobey the order, suffer sanctions, and appeal both the underlying order and the order granting sanctions once a final, appealable order was entered. Because Plaintiff lacked an adequate and effective means of challenging the trial court's discovery ruling, the collateral bar rule does not preclude Plaintiff from seeking review of the underlying order overruling her claim of physician-patient privilege. *Dep't of Revenue v. Universal Foods Corp.*, 318 Or. 78, 862 P.2d 1288 (1993) (en banc) (declining to apply collateral bar rule where contemnor had no appeal as of right from order, discretionary review was denied and order subjected appellant to irremediable harm of compelled disclosure of allegedly privileged information).

■■ {31} Defendant argues that Plaintiff waived any claim of error by "consenting" to the dismissal of her claims. We disagree. The trial court's order granting Defendant's motion to compel states that "Plaintiff's medical bills and records are not privileged insofar as Plaintiff has placed her medical condition as issue." Consistent with this view of the law, the trial court ordered Plaintiff to execute a general release over Plaintiff's objection that it was improper to permit discovery of information not relevant to a claim or defense. The portions of the sanctions hearing quoted above demonstrate that the trial court clearly understood that Plaintiff disagreed with the underlying discovery ruling. Defendant concedes in her brief to this Court that Plaintiff's counsel's remarks at the sanctions hearing "specifically advised the court that [Plaintiff] would not comply with the court's [discovery] order and that lesser sanctions would not compel her to comply with the court's discovery order." We do not understand Plaintiff to be arguing that the trial court abused its discretion in its *choice*

of sanctions. Defendant's argument would be more persuasive in that context. Rather, we understand Plaintiff to be arguing that *no* sanctions, however slight, were justified because Plaintiff could not properly be compelled to disclose privileged communications. In this context, Plaintiff's counsel's remarks to the trial court during the sanctions hearing cannot reasonably be construed as indicating Plaintiff's consent to dismissal.

## CONCLUSION

{32} The trial court's order dismissing Plaintiff's complaint is reversed and this matter is remanded for further proceedings consistent with this opinion.

{33} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, M. CHRISTINA ARMIJO, Judge.