The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>October 15, 2024</u>

**No. A-1-CA-39915**

**ENERGY POLICY ADVOCATES,**
**a Washington nonprofit corporation,**

     Plaintiff-Appellant,

v.

**HECTOR BALDERAS, ATTORNEY**
**GENERAL FOR THE STATE OF**
**NEW MEXICO,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Court Judge**

Peifer, Hanson, Mullins & Baker, P.A.
Gregory P.Williams
Albuquerque, NM

Aragon Moss George Jenkins, LLP
Jordon P. George
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Erin E. Lecocq, Assistant Attorney General
Jeff D. Herrera, Assistant Attorney General
Kathleen Rosemary Bryan, Assistant Attorney General
Billy Jimenez, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

{1}     Plaintiff Energy Policy Advocates (Advocates) appeals the district court's grant of summary judgment to the former Defendant Attorney General for the State of New Mexico, Hector Balderas, and to the Office of the Attorney General (collectively, the OAG)[1] under the Inspection of Public Records Act (IPRA), NMSA 1978, § 14-2-1 to -12 (1947, as amended through 2023).[2] In March and April 2020, Advocates requested inspection of common interest agreements entered into by the OAG with other states' offices of the attorney general, as well as correspondence and emails relating to the formation of these agreements. The OAG responded to the requests by withholding some responsive documents altogether, without disclosing that any documents were being withheld, producing some documents with all but a "privileged or confidential" stamp redacted, and producing other documents with

---

[1]Defendant Balderas's term as Attorney General for the State of New Mexico ended during the pendency of this appeal, on January 1, 2023, after which Raúl Torrez, the current Attorney General, began his term. Although substitution of parties when a suit is filed against a public official is automatic, we have not changed the caption to avoid confusion engendered by the change not just of attorneys general, but also in the name of the office from the OAG to the New Mexico Department of Justice. *See* https://nmdoj.gov/about-the-office (last visited October 9, 2024).

[2]Some sections of IPRA were amended or renumbered since the requests for documents were made in this case in April through June 2020. Because some of the amendments might affect the arguments made in this appeal, we cite to the IPRA provisions in effect in 2020, when the requests at issue here were made.

multiple lengthy redactions. The OAG's written response explaining its denials of inspection stated that the redactions were supported by the IPRA exception for law enforcement records or because the redactions constituted confidential attorney-client communication and protected attorney work-product. Advocates filed a Section 14-2-12(A) enforcement action in district court, challenging both the withholding of some documents and the heavy redaction of the documents provided, claiming that none of the cited IPRA exceptions supported the denial of responsive information. Advocates' complaint sought disclosure of the full, unredacted documents, or in camera review of the redacted and withheld information by the district court. The OAG filed a motion for summary judgment arguing that its blanket assertion of attorney-client privilege and/or work-product, together with its assertion of good faith, established a prima facie case justifying the denial of inspection of unidentified, withheld documents, as well as the redactions it made on the documents that were produced. The district court agreed, granting summary judgment to the OAG on all claims. We reverse the grant of summary judgment and remand to the district court for further proceedings in accordance with this opinion.

**BACKGROUND**

{2}     Advocates submitted six IPRA requests to the OAG between March and April 2020. These requests were for the inspection of common interest agreements entered into by the OAG with other states' offices of the attorney general, as well as for

correspondence related to the formation of these common interest agreements. Common interest agreements are contracts among parties acknowledging a shared legal interest and agreeing "to engage in a joint effort and to keep the shared [attorney-client privileged] information confidential from outsiders." *Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 2019-NMCA-012, ¶ 19, 436 P.3d 1 (internal quotation marks and citation omitted). A validly entered common interest agreement allows the parties to the agreement to disclose attorney-client privileged information to each other without waiving the attorney-client privilege. *See id.*

{3} The OAG concedes in its motion for summary judgment that it withheld some of the common interest agreements altogether, provided some agreements with everything but a privilege stamp redacted, and provided heavily redacted copies of other responsive documents. The redactions included the names of the parties to each common interest agreement, the joint interest that is the subject matter of the agreement, the date the agreement was entered, and any reference to already pending litigation (if that was the subject of the agreement), as well as other blacked out pages and paragraphs that are not identifiable.

{4} The custodian of records for the OAG provided written responses, as required by Section 14-2-11(A). The initial responses to the March and April 2020 requests stated that "partial information of these records are being withheld by redactions

pursuant to . . . Section 14-2-1(A)(4) and Rule 1-026(B)(4) NMRA as they constitute protected attorney work-product."[3]

{5}  In its responses beginning at the end of May 2020 the OAG added to the exceptions to IPRA previously cited in its responses a statement that the redactions "constitute protected attorney work-product and a [c]ommon [i]nterest [a]greement." The OAG relied on these exceptions in its summary judgment motion in district court.

{6}  In June 2020, Advocates filed its complaint in the district court seeking to enforce IPRA. Advocates alleged that the OAG's responses to its requests for inspection violated IPRA because they relied on generalized, conclusory citations to exemptions, and provided no explanation as to how these exemptions applied to each of the redactions or to the unidentified documents that were withheld in their entirety. Advocates sought statutory damages under Section 14-2-11(C) for this violation. Advocates also claimed that the denials of inspection and the extensive redactions were not supported by any of the exemptions to IPRA claimed by the OAG. Advocates asked the district court to order the OAG to produce unredacted copies of the requested records, or in the alternative, to conduct an in camera review

---

[3]Section 14-2-1(A)(4) (2011) was a prior codification of the exception for law enforcement records, which was no longer in effect at the time of the response. *Compare* § 14-2-1(A)(4) (2011), *with* § 14-2-1(A) (2020). The work-product rule is Rule 1-026(B)(5), and not the cited Rule 1-026(B)(4).

of the redacted information to determine whether any exception to inspection properly applied, and then to disclose all nonexempt information. This claim arose under Section 14-2-12.

{7} The OAG filed its motion for summary judgment on May 12, 2021,[4] claiming that the issues before the district court were solely questions of law that could be resolved by summary judgment. The motion framed the issue of law as whether the withheld information was "subject to one or more enumerated [IPRA] exceptions." The exceptions the OAG relied on were Section 14-2-1(F), which exempts from inspection communications subject to attorney-client privilege, and the attorney work-product exception, which the OAG claimed was incorporated into IPRA by IPRA's catch-all provision, Section 14-2-1(H). The motion did not describe the content of documents withheld or the content of the lengthy redactions in the documents produced that allegedly qualified this information as privileged. The OAG's motion treated all documents and all redactions collectively as though describing a single document or single redaction. The motion's statement of

[4]Although there was some discovery and a district court ruling that the partial privilege log provided by the OAG was inadequate, and an order to supplement it prior to the filing of the OAG's motion for summary judgment, there is nothing in the record or in the parties' appellate briefs indicating whether a supplemental log was provided, or, if it was provided, what it contained. Most importantly, the OAG did not rely on or cite to a privilege log or offer by affidavit the information such a log should contain as support for its motion for summary judgment. We must rely solely on the facts properly asserted in the OAG's motion for summary judgment in our review on appeal.

undisputed material facts lists Advocates' six IPRA requests, and asserts, without an affidavit in support, that the OAG records custodian responded to these requests by "disclosing some documents fully, disclosing some records with portions redacted, and withholding some records entirely." After describing the six requests at issue, the OAG's statement of material facts describes the written response of the OAG custodian. That response is described as stating that the redactions were made pursuant to IPRA Section 14-2-1(A)(4) and Rule 1-026(B)(4), "as they constitute confidential attorney-client communication and protected attorney work-product." In a footnote, the OAG acknowledges that the applicable provisions of IPRA are Section 14-2-1(F), the exception for attorney-client privilege, and Section 14-2-1(H), the catch-all provision incorporating the attorney work-product doctrine set forth in Rule 1-026(B)(5).

{8}    In its argument for summary judgment, the OAG argues that its withholding of documents without identifying what was withheld and the redactions made to the documents produced for inspection did not violate IPRA because "[t]he OAG properly determined that the redacted portions of the responsive records provided constituted protected attorney work-product and attorney-client communications related to work done by attorneys general offices and contracted attorneys across the country for legal matters that are of a public interest and affect every involved state." The OAG also relied on the stamp of "privileged" or "confidential," found on some,

6

but not all, of the heavily redacted agreements produced, claiming that "[f]or purposes of IPRA, a good faith claim of privilege can, and does in this case, protect documents from disclosure."[5]

{9}     Advocates argued in response that summary judgment should only be granted when "the moving party is entitled to a judgment as a matter of law based upon clear and undisputed facts." Advocates contended that what it described as the OAG's conclusory, blanket assertion of "common interest" and/or attorney work-product immunity as to all of the denied documents and redacted information fails to meet the OAG's burden to demonstrate, with evidence, that attorney-client privilege or work-product immunity applies to each document withheld and to each redaction. Advocates' response notes that both our precedent and the OAG Inspection of Public Records Act Compliance Guide[6] acknowledge that "[m]erely declaring certain documents to be confidential by regulation or agreement will not exclude them from

---

[5]In the last sentence of its argument in its reply brief on appeal, the OAG asserts that the district court reviewed the unredacted documents. The twelve unredacted documents apparently obtained by Advocates from other states' attorneys general were attached to Advocates' motion for partial summary judgment. That motion was never fully briefed, was not submitted to the district court prior to the entry of summary judgment, and was not considered by the court. There is no support for the assertion that the district court reviewed any unredacted documents. We do not consider this unsupported assertion, which is inconsistent with both the OAG's argument in the district court and its argument on appeal.

[6] The Compliance Guide can be found at https://legal.nmsu.edu/wp-content/uploads/sites/28/2013/10/2015-Edition-of-AG-NMIPRA-Compliance-Guide.pdf.

7

inspection" under IPRA. Advocates challenges the OAG's claim that the good-faith assertion of a privilege by a public agency is adequate under New Mexico law to support summary judgment, quoting this Court's statement that "New Mexico's policy of open government is intended to protect the public from having to rely solely on the representations of public officials that they have acted appropriately." *Britton v. Off. of the Att'y Gen.*, 2019-NMCA-002, ¶ 29, 433 P.3d 320 (internal quotation marks and citation omitted).

{10} In its reply in support of its motion for summary judgment, the OAG reasserts its claim that its motion "sets forth a prima facie case for summary judgment" and claims Advocates failed to introduce evidence demonstrating that facts are in dispute. It again asks the district court to grant summary judgment in its favor.

{11} The district court granted the OAG's motion for summary judgment, stating only that the court agreed with the OAG's articulation of New Mexico law, and finding that "there is no material issue of fact in dispute in this matter." The district court denied Advocates' request for in camera review of both the withheld documents and the redactions. Advocates appealed.

**DISCUSSION**

**I.      Standard of Review**

{12} "This Court's review of orders granting or denying summary judgment is de novo." *Cahn v. Berryman*, 2018-NMSC-002, ¶ 12, 408 P.3d 1012 (internal quotation

8

marks and citation omitted). Summary judgment is only appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. In undertaking our review of the grant of summary judgment, we bear in mind that "[t]he burden is on the moving party to show an absence of a genuine issue of fact, and that it was entitled as a matter of law to judgment in its favor." *Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720. The movant must make a prima facie showing with evidence "sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). If the moving party fails to make a prima facie showing that it is entitled to summary judgment, summary judgment is not proper as a matter of law; the moving party is not entitled to judgment "even if the nonmoving party totally fails to respond to the motion." *Brown*, 1995-NMSC-050, ¶ 8.

{13} To the extent we are required to construe applicable statutes, our review is de novo. *See Dunn v. N.M. Dep't Game & Fish*, 2020-NMCA-026, ¶ 3, 464 P.3d 129 (noting that this Court reviews de novo disputes that require us to "construe the statute and apply the relevant case law to undisputed facts"). "The starting point in every case involving the construction of a statute is an examination of the language utilized by the Legislature in drafting the pertinent statutory provisions." *State v.*

*Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (alteration, internal quotation marks, and citation omitted). "We look first to the words chosen by the Legislature and the plain meaning of the Legislature's language," together with "the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶¶ 14, 90, 492 P.3d 586 (Bacon and Thomson, JJ, dissenting) (internal quotation marks and citation omitted). "The entire statute [must] be read as a whole so that each provision may be considered in its relation to every other part." *State ex rel. Newsome v. Alarid*, 1977-NMSC-076, ¶ 9, 90 N.M. 790, 568 P.2d 1236, *superseded by statute as stated in Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, 283 P.3d 853. "A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." *Id.* Finally, we also review the application of a privilege de novo. *See Breen v. N.M. Tax'n & Revenue Dep't*, 2012-NMCA-101, ¶ 21, 287 P.3d 379.

**II.     The IPRA Framework Pertaining to This Case**

{14}     "Our Legislature enacted IPRA to promote the goal of transparency in our state government." *Republican Party of N.M.*, 2012-NMSC-026, ¶ 12. In the statement of policy adopted as part of IPRA, our Legislature described its intent "to ensure . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the acts of public officers and employees." Section

10

14-2-5. As our Supreme Court explained, construing this language, "[t]he citizen's right to know is the rule and secrecy is the exception." *Newsome*, 1977-NMSC-076, ¶ 34.

{15} IPRA does not leave enforcement of its provisions to the public agencies' mere good faith. As this Court has previously explained, "New Mexico's policy of open government is intended to protect the public from having to rely solely on the representations of public officials that they have acted appropriately." *Britton*, 2019-NMCA-002, ¶ 29 (internal quotation marks and citation omitted). "IPRA is intended to ensure that the public servants of New Mexico remain accountable to the people they serve." *Republican Party of N.M.*, 2012-NMSC-026, ¶ 12 (internal quotation marks and citation omitted).

{16} Our Legislature's intent to make government as transparent as possible is carried out by statutory terms that begin by strictly limiting the exceptions to inspection of requested documents. *See* § 14-2-1. The statutory procedures initially place the burden on the public agency to identify responsive documents and make a determination about whether any of the limited exceptions to disclosure apply to the whole document or to portions of it, depending on the exemption and the nature of the document. The custodian of records is given fifteen days to identify and review the responsive records to determine whether exemptions apply. Section 14-2-8(D). When both exempt and nonexempt information is identified, that information "shall

11

be separated by the custodian prior to inspection, and the nonexempt information shall be made available for inspection." Section 14-2-9(A). *See Henry v. Gauman*, 2023-NMCA-078, ¶ 20, 536 P.3d 498 ("When an exemption applies to a document as a whole, . . . Section 14-2-9(A) requires the custodian of records to separate exempt documents from nonexempt documents. When an exemption applies only to certain portions of a document or certain types of information within a document, then separating the exempt from nonexempt material demands redaction of the exempt material."), *cert. denied*, 2023-NMCERT-010 (S-1-SC-40039). If inspection of any responsive record is denied in whole or in part, the custodian of records must provide a written response listing the requests, revealing the persons responsible for responding to each request, and providing "a written explanation of the denial." Section 14-2-11(B).

{17}   IPRA includes several enforcement mechanisms. *See Faber v. King*, 2015-NMSC-015, ¶ 12, 348 P.3d 173 ("Sections 14-2-11 and 14-2-12 create separate remedies depending on the stage of the IPRA request."). Section 14-2-11(C) allows a district court to impose penalties on a state agency that fails to meet the procedural and substantive requirements for initial review and production of documents and Section 14-2-12 provides for court review of the merits of a public agency's decision to deny inspection. Penalties are available under Section 14-2-11(C). Compensatory damages are available to a successful requestor under Section 14-2-12(D). *See*

12

*Faber*, 2015-NMSC-015, ¶ 29 ("[W]e hold that the Legislature intended for Section 14-2-12 to only authorize the recovery of compensatory damages, costs, and attorney[] fees associated with the litigation to enforce a wrongfully denied IPRA request.").

{18} The complaint in this case challenges, under Section 14-2-12, the applicability of the exceptions for the attorney-client privilege as extended to those with a common interest, and attorney work-product immunity, the exceptions relied on by the OAG to justify its denial of inspection of both whole documents and redacted portions of some documents.

**III. The OAG Failed to Establish a Prima Facie Case for Summary Judgment on Either the IPRA Exception for Attorney-Client Privilege, as Extended by the Common Interest Doctrine, or the Catchall Exception for Attorney Work-Product**

{19} Advocates contends on appeal that the district court erred as a matter of law in granting summary judgment based on the OAG's mere assertion that all of the redacted material and the documents withheld were properly subject to either the attorney-client privilege as extended by the common interest doctrine, or the attorney work-product immunity. Even assuming that the OAG's claims of privilege or immunity were made in good faith, Advocates contends that establishing a prima facie case for summary judgment requires the public agency to provide evidence as to the nature of each redaction and each withheld document sufficient to allow the district court to determine if an exception to IPRA based on privilege or immunity

applies. Advocates contends that if the information provided by the public agency is insufficient to allow the district court to determine whether the privilege or immunity is applicable, the court cannot grant summary judgment and must either require the public agency to provide sufficient information to the court by affidavit or testimony, or conduct an in camera review of the documents.

{20} In response, the OAG claims that a public agency's good-faith identification of a privilege or immunity is all that IPRA requires to meet the public agency's burden to present a prima facie case, which if not rebutted by Advocates, entitles the OAG to summary judgment. According to the OAG, the fact that "[a] significant number of the records redacted were plainly labeled as confidentiality agreements . . . concerning privileged matters and common interest agreements," together with the OAG's representation to the district court that it acted in the good-faith belief that the material was subject to an IPRA exemption was sufficient such that "it can be deduced [by the court without an in camera inspection that] the records were subject to the attorney-client and work-product exemptions under IPRA."

{21} We conclude that a generalized assertion of privilege or immunity, even if the public agency asserts the privilege or immunity in good faith, is not sufficient to establish a prima facie case of compliance with IPRA supporting summary judgment. Because the OAG did not establish a prima facie case for application of either attorney-client privilege, as extended by the common interest doctrine to

14

protect privileged communications disclosed to those with a shared common interest, or attorney work-product immunity, we reverse the grant of summary judgment.

## A. A Good Faith Assertion of a Privilege or Immunity by a Public Agency Is Not Sufficient to Establish a Prima Facie Case for Summary Judgment

{22} The OAG claimed in the district court, and claims again on appeal, that its blanket assertion of attorney-client privilege, and of work-product immunity, in the alternative, as to all documents and all redactions, together with its representation to the district court that it acted in good faith, is sufficient to eliminate any need for the OAG to support its motion for summary judgment by an affidavit, a list or a log. In short, the OAG asserts it did not need to present evidence about the nature of each withheld document or each redaction sufficient to allow Advocates and the district court to assess the validity of its claims without an in camera review. In support of this argument, the OAG relies on this Court's observation in its opinion in *Britton* that "[t]he only basis IPRA provides for a public body to deny a person the right to inspect a public record is the body's reasonable, good-faith belief that the record falls within one of IPRA's enumerated exemptions." 2019-NMCA-002, ¶ 31. The OAG misconstrues the import of this statement, and ignores the foundational principal that it is courts, not litigants, that ultimately determine whether a privilege exists. *See* Rule 11-104(A) NMRA ("The court must decide any preliminary question about whether . . . a privilege exists."); *see also S.F. Pac. Gold Corp. v.*

15

*United Nuclear Corp.*, 2007-NMCA-133, ¶ 13, 143 N.M. 215, 175 P.3d 309 ("The party claiming privilege has the burden of establishing that a communication is protected.").

{23}     A public agency's "reasonable, good-faith belief that the record falls within one of IPRA's enumerated exemptions" is the statutorily required basis for the decision of an agency's custodian of records to refuse to disclose a document or to redact a portion of a disclosed document prior to allowing inspection. *Britton*, 2019-NMCA-002, ¶ 31. Section 14-2-11(B) of IPRA imposes an affirmative duty on the public agency to either provide for inspection of all responsive public records or issue a denial in which the custodian explains the public agency's "reasonable, good-faith belief that the record falls within one of IPRA's enumerated exemptions." *Britton*, 2019-NMCA-002, ¶ 31 The public agency cannot rest on its reasonable, good-faith belief that it properly withheld information if the requesting party disagrees and challenges the public agency's decision to withhold information in district court—the remedy for a denial adopted by our Legislature in Section 14-2-12. The OAG's construction of the good faith requirement as sufficient to meet its burden in an enforcement action in district court is inconsistent with our Supreme Court's holding that, when an IPRA enforcement action is filed in district court under Section 14-2-12 alleging that information was improperly withheld, "the burden [falls on the public agency] to demonstrate that one of the IPRA exceptions

16

from inspection covered the withheld records." *See Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 49, 470 P.3d 252; *see also Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶¶ 18-19, 139 N.M. 671, 137 P.3d 611 (holding that a public body has the burden of proving that the information requested is not subject to inspection and that in camera review by the district court of the requested records may be necessary to reach a determination). The public agency's burden to justify the withholding of information in an enforcement proceeding in district court cannot be satisfied by a good-faith assertion that all of the documents withheld or redacted were "privileged or confidential," as the OAG claims on appeal.

**{24}** This Court has held that the good faith of the public agency plays a role in IPRA enforcement actions under both Section 14-2-11(C) and 14-2-12. That role, however, is limited to the district court's consideration of damages to the party requesting the documents, after the court has decided that an asserted exemption to disclosure was not properly applied or that the custodian failed to adequately respond to a request. In an action brought under Section 14-2-11(C) for noncompliance or nonresponsiveness in the initial production, the district court can deny or limit the statutory penalty if it finds that the public agency's response was reasonable. If, at the damages stage of a proceeding under Section 14-2-12 to obtain disclosure of withheld documents, the district court finds that an exception to IPRA was asserted

by the public agency in good faith, "even if the denial is later deemed unlawful," compensatory damages are not required. *Faber*, 2015-NMSC-015, ¶ 31. The public agency's good faith, however, is not relevant to the district court's decision about whether the denial was lawful, the question at issue in this case.

**B.      The Law Defining What Evidence Is Sufficient for a Prima Facie Showing of Attorney-Client Privilege as Extended by the Common Interest Doctrine, and of Attorney Work-Product Immunity**

{25}      As the party moving for summary judgment, the OAG was subject to the requirements of Rule 1-056 NMRA, which places on the moving party the burden of establishing a prima facie case for summary judgment. A prima facie case requires that the moving party present evidence "sufficient in law to raise a presumption of fact or establish the fact in question." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). The facts that must be established are determined by the substantive rules of law governing the parties' dispute. *See Martin v. Franklin Capital Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24. In this case, the OAG was required to establish a prima facie case that the common interest agreements were protected by the attorney-client privilege or that attorney work-product immunity applies to the documents withheld and to the redactions made. Absent such a showing, summary judgment must be denied. *See Goodman v. Brock*, 1972-NMSC-043, ¶ 8, 83 N.M. 789, 792, 498 P.2d 676.

18

**{26}** We begin, therefore, by looking to the substantive rules of law that govern this dispute. The OAG relied on IPRA's exception for attorney-client privilege, Section 14-2-1(F), arguing that this section incorporates Rule 11-503 NMRA, and therefore includes the common interest doctrine extending the privilege to those with a common interest, Rule 11-503(D)(5). The OAG also argued that that IPRA's catch-all provision, Section 14-2-1(H), incorporates the work-product doctrine, Rule 1-026(B)(5).

**{27}** In construing the provisions of IPRA governing privileges and immunities, our Supreme Court has held that IPRA incorporates the privileges applied in litigation under the rules adopted by the Court, and that any expansion of the privileges beyond those applied in litigation is inconsistent with IPRA's guiding purpose of promoting government transparency. *See Republican Party of N.M*, 2012-NMSC-026, ¶ 38 ("We discern no legally sound reason to recognize privileges applicable to public records requests where we have not done so in the context of litigation."); *see also id.* ¶ 13 ("Without proof of the Legislature's intent to the contrary, we do not construe IPRA to contemplate privileges not applicable elsewhere in our state government."). Our Supreme Court has made clear that Rule 11-503 and Rule 1-026(B)(5), and New Mexico precedent from our Supreme Court and this Court construing these rules, is the substantive law governing the application of these privileges and immunities as exceptions to IPRA.

{28}     To establish a prima facie case that a document or a portion of a document is protected by the attorney-client privilege as extended to those with a common interest, the proponent of the privilege must first establish that the document or the redacted portion is protected by the attorney-client privilege. This requires a showing that the communication was between a client and a lawyer, that the client intended it to be confidential, and that it was "made for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B). "What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*." *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 27.

{29}     We emphasize that the common interest doctrine, Rule 11-503(B)(3), is not a stand-alone privilege; its application requires a showing that the document at issue is protected by the attorney-client privilege. The common interest doctrine allows a communication shown to be a confidential, privileged communication between a client and a lawyer to be shared with attorneys and their clients with a common interest without the privilege being waived. *See Albuquerque J.*, 2019-NMCA-012, ¶ 19 n.4. To claim an exemption from waiver under the common interest doctrine, the proponent of the doctrine must first establish that the document is a communication protected by the attorney-client privilege. After the document is shown to be subject to attorney-client privilege, the application of the common

interest doctrine then requires an additional showing of the existence of an agreement to share confidential communications with a person shown to have an identical legal interest to the client, and that the agreement was entered into prior to the communications being shared. *See id.* ¶ 19 (holding that under the common interest doctrine, a communication is protected when: "(1) the parties to the communication shared an identical legal interest in the subject matter of each communication claimed to be privileged; (2) the communication was made during the course of a joint defense effort . . . and in furtherance of that effort; and (3) the shared identical legal interest existed at the time the communication was made as reflected by a preexisting, or at the very least contemporaneous, agreement of the parties." (internal quotation marks and citation omitted)).

{30}     Common interest agreements themselves generally are not privileged. They formalize the invocation of a common interest in communications between the parties to the agreement in the future. They are not confidential because they are intended to be produced to others, including opposing parties, who seek disclosure of shared attorney-client privileged communications. *See, e.g.*, *Diversified Dev. & Inv. Inc. v. Heil*, 1995-NMSC-005, ¶ 18, 119 N.M. 290, 889 P.2d 1212 (holding that attorney-client privilege does not apply to communications or documents intended to be disclosed to others). In *Albuquerque Journal*, this Court held that the information about the formation of a common interest agreement, the date it was

formed, the parties to the agreement, and the common legal interest claimed were all "essential elements necessary to prove the applicability of the attorney-client privilege, based on a claimed common interest," and that the failure to provide this information justified the court's denial of the claim of privilege.[7] *Albuquerque J.*, 2019-NMCA-012, ¶ 22. Common interest agreements do not generally contain litigation strategy, mental impressions, legal theories or legal conclusions. In the event that some portion of the agreement incorporates substantive legal advice given by one of the attorneys to their client, or shares the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning [anticipated or pending] litigation," those portions of the document, and only those portions, would likely be protected respectively by attorney-client privilege or attorney work-product immunity. Rule 1-026(B)(5); *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 39 (same) (internal quotation marks and citation omitted). The

---

[7]We note that a party attempting to establish an attorney-client privilege is not permitted to withhold information essential to assess whether the privilege applies (such as the names of the sender and the recipients, the date the agreement was entered, and the pending litigation to which the agreement applies, or the common interest asserted). It is basic information necessary to assess the claim of privilege and is not itself protected by the privilege. *See Albuquerque J.*, 2019-NMCA-012, ¶ 23 (holding that a party asserting a privilege cannot rely on a conclusory assertion of privilege and refuse to provide "basic information necessary to assess the claim of privilege"); *Piña v. Espinoza*, 2001-NMCA-055, ¶ 25, 130 N.M. 661, 29 P.3d 1062 (disapproving "of the practice of permitting the proponent of a privilege to rely on an initial conclusory assertion of a privilege," and holding that the proponent of the privilege must provide a "basis for [their] claims of privilege").

22

OAG has not identified any redacted portion of a document discussing protected mental impressions, conclusions, opinions, or legal theories.[8]

{31} Our Supreme Court's rules governing litigation include a provision directing how privileges and work-product immunity will be established as to documents sought in discovery. Rule 1-026(B)(7)(a) states, in relevant part:

> Claims of privilege or protection of trial preparation materials.
>
> (a) Information withheld. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection pursuant to Subparagraph (5) of this paragraph as trial preparation materials, the party shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

{32} The OAG argues in its brief on appeal that this rule should not be used to guide the evidence required to establish that information withheld by a public agency under IPRA is subject to a privilege. The OAG claims that there are significant differences in the purpose of disclosure of documents in discovery and disclosure of

---

[8]We assume that the OAG is relying solely on opinion work-product—mental impressions, conclusions, opinions, or legal theories—in asserting work-product immunity, because that is the only part of the doctrine mentioned in its brief. *See Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 39 (distinguishing ordinary work-product from opinion work-product). The OAG does not cite any authority or provide a developed argument supporting a claim for ordinary attorney work-product. The OAG also provides no argument supporting the application of ordinary attorney work-product immunity under IPRA's catch-all provision, something that has not yet been addressed by this Court or our Supreme Court.

23

government records under IPRA and that these differences evince legislative intent to reject the application of Rule 1-026(B)(7)(a) to IPRA disclosure. We do not agree.

{33} As already discussed, our Supreme Court has construed IPRA to incorporate our Supreme Court rules governing the application of privilege in the context of litigation. The discovery rules were adopted by our Supreme Court "to enable the parties [in litigation] to obtain the fullest possible knowledge of the facts before trial," a purpose entirely consistent with IPRA's purpose of providing the fullest possible information to the public. *Marchiondo v. Brown*, 1982-NMSC-076, ¶ 13, 98 N.M. 394, 649 P.2d 462. In discovery, information is broadly subject to discovery, unless a privilege creates an exception. *See Piño*, 2001-NMCA-055, ¶ 14. Because we conclude that our Legislature intended to incorporate litigation procedures along with the substantive rules of privilege, we turn to the procedures provided by our Supreme Court Rules of Civil Procedure for guidance as to how the attorney-client privilege, as extended by the common interest doctrine, and attorney work-product immunity should be addressed by the district court in the context of an IPRA enforcement action under Section 14-2-12.

**C. Application of These Principles to the OAG's Motion for Summary Judgment**

{34} We now turn to examine the OAG's summary judgment motion applying these standards to determine if the evidence presented was sufficient to establish a prima facie case for summary judgment. In this case, the OAG's motion for summary

24

judgment admitted for the first time that that the OAG had identified other responsive documents, in addition to those disclosed. The motion does not again mention these documents, does not identify them, and does not provide a basis for the OAG's conclusion that they were exempt from inspection. The public records produced for Advocates' inspection—some of them common interest agreements and some email communications concerning the formation of the common interest agreements—were heavily redacted. The redacted documents were attached to Advocates' complaint. Three of the common interest agreements were redacted in their entirety, leaving only a stamp at the top stating "privileged or confidential." No document-by-document description of the reasons for withholding or redacting information was provided in support of the OAG's summary judgment motion. No affidavits of any sort were submitted to support the motion's allegations of attorney-client privilege or attorney work-product. The unredacted portion of the documents were standard boilerplate agreements to share confidential information. It is apparent that some of the information redacted, like the names of the participants agreeing to share confidential information, the date of each agreement, the common interest asserted, was not privileged, yet this information was not disclosed. No basic information was provided to assist in discerning why large sections of text had been redacted. We do not find evidence supporting the OAG's argument that "[b]eing

marked as ['privileged and confidential,'] it can be deduced the records were subject to the attorney-client and work-product exceptions under IPRA."

{35}    We conclude that the OAG failed to establish the elements of a prima facie case for the application of either attorney-client privilege or attorney work-product immunity for the documents it admits it withheld from inspection in their entirety and for the extensive redactions to the documents produced for inspection. We therefore reverse the district court's grant of summary judgment.

{36}    Although failure to adequately support a claim of privilege justifies denial of the claim of privilege, we exercise our discretion to remand to provide the new attorney general an opportunity to reassert these privileges and immunities as outlined in this opinion. *See Piña*, 2001-NMCA-055, ¶¶ 23-24 (stating that "[f]ailure to adequately support a claim of privilege thwarts both the adversarial process and meaningful independent judicial review and justifies denial of the claim of privilege," but exercising this Court's discretion to remand).

**IV.    Advocates' Claim of Waiver by Voluntary Disclosure of Twelve Common Interest Agreements**

{37}    Advocates also argue on appeal that the district court erred in failing to consider its motion for partial summary judgment, alleging waiver of both attorney-client privilege and attorney work-product immunity by the release of twelve of the common interest agreements by parties to the agreements in other states. Advocates attached a sworn declaration supporting this argument to its response to the OAG's

26

motion for summary judgment, and alerted the district court that it was completing and would shortly file an amended motion for partial summary judgment claiming waiver.

{38}     The OAG responded to the claim of waiver in its reply to Advocates' summary judgment motion, arguing principally that the issue of waiver must be determined at the time of the IPRA request and that Advocates had not shown that the twelve documents had been disclosed by other states at the time the IPRA request was made.

{39}     The district court did not grant what we understand to be Advocates' cross-motion for partial summary judgment on waiver, and also did not delay entry of a final judgment. We agree with the district court that Advocates did not carry its burden of presenting a prima facie case for partial summary judgment based on waiver of the privileges and immunities. *See Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 25 (holding that once the proponent of the privilege has established that the privilege applies, the burden switches to the party claiming the privilege was waived to prove waiver). However, because we are reversing the grant of summary judgment to the OAG on the basis that the OAG did not establish that any privilege or immunity applied, and remanding for further proceedings, Advocates should be given an opportunity to again raise its claims of waiver if any such claims remain

27

after the district court determines whether the documents at issue are subject to either attorney-client privilege or attorney work-product immunity.

**CONCLUSION**

{40}     Because the OAG failed to establish a prima facie case for summary judgment on its claims of attorney-client privilege and attorney work-product immunity, we reverse and remand to the district court for further proceedings. The district court is permitted to exercise its discretion to determine whether to entertain another motion for summary judgment from the Department of Justice, supported by affidavits or a detailed privilege log adequate to allow the court to assess whether the assertions of privilege are objectively reasonable, or proceed to in camera review of the documents and redactions. *See ACLU of N.M. v. Duran*, 2016-NMCA-063, ¶ 45, 392 P.3d 181 (providing that "[w]*here appropriate*, courts should conduct an in camera review of the documents at issue" when determining if documents are responsive or if privilege applies under IPRA) (emphasis added) (internal quotation marks and citation omitted)); *see also Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 28 (recognizing "the district court's discretion to request a . . . detailed privilege log . . . to assist in the court's [evaluation of] the privilege . . . [as] to each document"). Advocates' should also be given an opportunity to file cross-motions for summary judgment on its claim of privilege, and on the claims in its complaint under Section

14-2-11 that not all denials of inspections were explained by the OAG in its custodian's responses to the requests.

{41}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge,**
**Retired, sitting by designation**